IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Snyder, Michael                              *
5701 Dimes Road                              *
Rockville, MD 20855                          *
                202 - 366 - 5758             *
        Plaintiff                            *
                                             *
        v.                                   *
                                             *
Dale Lowery                                  *
820 North Carolina Ave, SE,                  *
Washington DC 20003                          *
                                             *
        and                                  *
                                             *
CASEtech, Inc.                               *
621 Pennsylvania Ave. SE                     *        Case No.: _____
Washington, D.C. 20003                       *
                                             *
        SERVE:                               *
                                             *
Dale Lowery, RA                              *
820 North Carolina Ave, SE,                  *
Washington DC 20003                          *
                                             *
        and                                  *
                                             *
L&S Real Estate LLC                          *
621 Pennsylvania Ave. SE                     *
Washington, D.C. 20003                       *
                                             *
        SERVE:                               *
                                             *
Dale Lowery, RA                              *
820 North Carolina Ave, SE,                  *
Washington DC 20003                          *
                                             *
        Defendants                           *

*       *       *       *       *       *       *       *       *       *       *       *       *

VERIFIED COMPLAINT

Plaintiff, Michael Snyder, ("Mr. Snyder"), by his attorney, David Zachary Kaufman, Esq. and KAUFMAN LAW, A Professional Corporation, as and for his Complaint against defendants, states as follows:

JURISDICTION

1. Jurisdiction of this Court is based on D.C. Code Ann. §11-921. Personal jurisdiction of this Court over the defendants is based on Court is based on 28 U.S.C. §1332 (Diversity).

THE PARTIES

2. Plaintiff Mr. Snyder is a resident and domiciliary of the State of Maryland, engaged in the business of providing computer consulting services to federal government agencies and other organizations in and about the District of Columbia metropolitan area.    Plaintiff Mr. Snyder is also engaged in the business of real estate investing in and about the District of Columbia metropolitan area. Mr. Snyder also owns 20% of Defendant CASEtech and 1/3 of Defendant L&S.

3. Defendant CASEtech, Inc. ("CASEtech") is, on information and belief, a Delaware corporation, carrying on business in, and with its principal offices situate in, the District of Columbia.

4. Defendant L&S, LLC,  ("L&S") is, on information and belief, a Washington, D.C. Limited Liability Corporation, on business in, and with its principal offices situate in, the District of Columbia.

5. Defendant Dale Lowery ("Lowery"), on information and belief, owns 80%

of the shares of CASEtech and is a shareholder, director, and officer [President] of CASEtech, and works in and from CASEtech's offices located in the District of Columbia.  Lowery is also, on information and belief, owns 2/3 of L&S and is the managing member of L&S and works in and from L&S's offices located in the District of Columbia.

FACTS

6.  At the times relevant hereto before the acts, events, and/or omissions precipitating this Complaint and/or complained of herein, Mr.  Snyder was, and should now be, a 20% shareholder, director, and officer [Vice President] of CASEtech.

7.  At the times relevant hereto before the acts, events, and/or omissions precipitating this Complaint and/or complained of herein, Mr.  Snyder was, and should now be, a 1/3 owner of L&S.

8.  Specifically, Mr.  Snyder was, and should be, the owner of 20% of the issued and outstanding shares of stock in CASEtech, which shares of stock are in his actual, legal and equitable possession (the "Snyder CASEtech Stock").

9.  Specifically, Mr.  Snyder was, and should be, the owner of 33.33% of the issued and outstanding shares of stock in L&S, which shares of stock are in his actual, legal and equitable possession (the "Snyder L&S Stock").

10.  By the Snyder CASEtech Stock, Mr.  Snyder is accorded 20% ownership of CASEtech and [concomitantly] 20% of the voting rights of CASEtech's stockholders.

11. By the Snyder L&S Stock, Mr. Snyder is accorded 33.33% ownership of L&S and [concomitantly] 33.33% of the voting rights of L&S's stockholders.

12. Lowery was, and should be, the owner only of the other 80% of the issued and outstanding shares of stock in CASEtech. By his shares of stock, Lowery was, and should be, accorded the other 80% ownership of CASEtech and [concomitantly] 80% of the voting rights of CASEtech's stockholders.

13. Lowery was, and should be, the owner only of the other 66.67% of the issued and outstanding shares of stock in L&S. By his shares of stock, Lowery was, and should be, accorded the other 66.67% ownership of L&S and [concomitantly] 66.67% of the voting rights of L&S's stockholders.

14. CASEtech is a close corporation by virtue of, inter alia, CASEtech's Stockholders' Agreement, dated March 9, 1999, when Mr. Snyder purchased his initial interest in CASEtech.

15. During early 2006, Most Ventures, Inc. (hereinafter "MVI") approached CASEtech, Lowery and Mr. Snyder to enquire about the possible purchase of Lowery's shares in CASEtech. Lowery was interested in selling his interest in CASEtech and withdrawing from the firm. MVI was interested in purchasing Lowery's interest in CASEtech provided that CASEtech was debt-free and provided that Mr. Snyder would sign a long-term employment contract. All parties were, upon information and belief, willing to undertake the appropriate actions to consummate the sale.

16. L&S is a close corporation by virtue of, inter alia, L&S's Operating

Agreement, dated April 26, 2000. (the "L&S Operating Agreement").

17. In March 2005, CASEtech owed approximately $200,000.00 to National Capitol Bank, $60,000.00 to Mr. Snyder, and $360,000.00 to Lowery. At that time, Mr. Snyder threatened to quit CASEtech unless, Lowery began to better control costs, start taking advice from Ms. Kirby, who was promoted to COO, and begin paying more attention to the company from a management and marketing perspective. To consolidate debt, and with Mr. Snyder's consent, L&S began to loan money to CASEtech with the plan to pay it off by expanding CASEtech's business.

18. Also in March 2005, Mr. Snyder started work at the U.S. DOT full time and day-to-day management of CASEtech devolved upon Lowery and Kirby.

19. On or about May 4, 2005, Mr. Snyder and Kirby arranged a meeting with another consulting company about a possible purchase or investment in CASEtech. The attempt was unsuccessful. Following this, Lowery decided that he would pursue the sale of CASEtech and/or his interest in CASEtech.

20. On March 9, 2006, at Mr. Snyder's first meeting with MVI, he discovered that in one year, Lowery had managed to run up another $400,000.00 in debt including $20,000.00 in back payroll to Mr. Snyder and $360,000.00 which Lowery allegedly loaned to CASEtech.

21. At the time MVI approached CASEtech and Lowery, CASEtech owed, upon information and belief, approximately $200,000 to National Capital Bank, approximately $320,000 to Lowery, $305,000.00 to L&S and approximately

$20,000 to Mr. Snyder.

22. In order to pay CASEtech's debts Lowery proposed to Mr. Snyder that L&S sell one of its properties, the property at 515 Second St. NE, Washington, D.C. and that the money realized from the sale be invested in CASEtech.

23. Because the property at 515 Second St. NE, Washington, D.C. was originally acquired by L&S with monies borrowed from CASEtech (and since repaid), Mr. Snyder agreed to sell the property and invest some money back into CASEtech.

24. In November 2005 Lowery drew up a document called a "Funding Allocation Agreement" which he presented to Mr. Snyder for signature. The Agreement, dated November 4, 2005, was presented to Mr. Snyder before he had any knowledge of MOST or that CASEtech has accumulated additional debt of $270,000.00 which was owed to Lowery.

25. This Funding Allocation Agreement not only provided for the bank loan to be repaid, the agreement provided that monies Lowery had advanced to CASEtech would also be repaid out of the proceeds of the sale.

26. Lowery presented the Agreement to Mr. Snyder telling Mr. Snyder that the Agreement had to be signed immediately. Trusting Lowery, Mr. Snyder signed.

27. Lowery's intent, on information and belief, as President of CASEtech, was to use this money to pay off all CASEtech's debt, including CASEtech's debt to himself.

28. To that end, Lowery persuaded Mr. Snyder to sign without reading a

document agreeing that L&S would sell some of its real estate property (the property at 515 Fifth St. SE, Washington, D.C. ) and invest a portion of the proceeds to CASEtech. Lowery represented, and Mr. Snyder believed, that only enough money to pay off the $200,000.00 bank loan would be invested into CASEtech. Lowery further represented, and Mr. Snyder believed, that the remainder of the profits from the sale of the L&S property would be distributed to L&S's owners in accordance with L&S's Operating Agreement. This turned out not to be the case.

29. Instead, almost all the proceeds from the sale of 515 Second St., NE was "invested" into CASEtech so that CASEtech could pay off all its debt (to the bank and to Lowery himself). The net result of these actions by Lowery resulted in Mr. Snyder's 33.33% interest in the proceeds from selling L&S's property at 515 Second St. NE being converted into a 20% interest in CASEtech's assets--a loss of approximately $133,333.33. This was done through deception and without Mr. Snyder's consent.

30. When Mr. Snyder protested this scheme, Lowery, purporting to act in his capacity as President of CASEtech did the following:

a. Refused to pay Mr. Snyder's approximate $140,000 per annum salary as an officer/employee of CASEtech, until legal action was threatened while, at the same time Lowery was and is drawing in excess of $10,000.00/month in so-called salary and "bonuses" therefrom and, upon information and belief, Lowery was and is paying his brother in excess of $5,000.00/month in so-called salary and

"bonuses" therefrom.[1]

      b.  Wrongfully refused to pay to Mr. Snyder and had wrongfully detained L&S, Mr. Snyder's share of L&S's profits from selling the property at 515 Fifth St. SE. and

      c.  Upon information and belief, Lowery stopped working on CASEtech matters that were his responsibility such as marketing and obtaining new contracts or extensions of existing contracts.

31.  As a result of all these things, MVI decided not to go forward with the purchase of Lowery's shares of CASEtech.

32.  As a further result of all these things, the value of CASEtech went from, upon information and belief, approximately $500,000.00 in May 2006, to, upon information and belief, zero ($0.00).

33.  The alleged "cash crisis" and apparent cash shortfall of the Companies were and are not due to reasonable expenditures and/or liabilities incurred in the normal conduct of CASEtech's business. Rather, the assets/monies of CASEtech have been wasted and/or misappropriated by Lowery on various non-corporate personal liabilities and obligations, including corporate funds expended on non-business entertainment, residential purchases, and personal purchases; expenditures of corporate funds on family members and friends for "working" for CASEtech; misuse of funds in CASEtech management accounts for diversion to his personal

---

[1]    Mr. Snyder makes no claim for the withheld salary and wages as Mr. Lowery paid the amount owed under threat of lawsuit.

real estate ventures, personal uses, and personal political causes; lavish expenditures on unneeded office space; and upon information and belief, secret purported "advances", "bonuses", "salaries", and/or "commissions" to Lowery concealed by him from Mr. Snyder, not made in accordance with the by-laws and not evident on the corporations' books controlled by Lowery and his brother.

34. Lowery has in addition alleged that because Mr. Snyder refused to accede to Lowery's actions in repaying himself for his loans to CASEtech from the proceeds of selling L&S's property at 515 Second Street, Mr. Snyder interfered with Lowery's sale of his CASEtech stock to MVI.

35. It is therefore necessary for this Honorable Court to preserve the *status quo* as existent before the aforesaid predicate bad acts of defendants: namely, to temporarily, preliminarily, and permanently enjoin any actions by Lowery as Managing Member of L&S, LLC and President and CEO of CASEtech, Inc. until it is revealed and/or determined what should be done with the approximately $891,456.00 proceeds from L&S's sale of its property at 515 Fifth St. SE, Washington, D.C. and temporarily, preliminarily and permanently enjoining any actions or attempts to transfer any of the approximately $891,456.00 of L&S, LLC's money to CASEtech to temporarily, preliminarily, and permanently enjoin the selling, liquidation and/or disposing of the CASEtech's and L&S's assets pending final disposition of this case; and to temporarily, preliminarily, and permanently enjoin any wasting, misappropriation and/or the selling, liquidation or disposing of either CASEtech's or L&S's assets, pending final disposition of this case.

36. As a result of the actions, errors and omissions aforesaid of defendants Lowery, CASEtech and L&S, Mr. Snyder has suffered and will continue to suffer damages, including damages caused by the transfer of funds from L&S to CASEtech, at the actual value thereof of at least $634,915.00 for which Mr. Snyder seeks judgment *infra*.

COUNT I
INJUNCTIVE RELIEF

37.    Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-36 of this Complaint.

38. As stated aforesaid, after Mr. Snyder objected to Lowery's initial scheme to have CASEtech repay himself using Mr. Snyder's money from L&S, Lowery (as majority owner of both firms) went ahead and did it anyway.

39. As stated aforesaid, Mr. Snyder has specifically and formally objected to the aforesaid loans and payments.

40. Also as stated aforesaid, the reasons given by Lowery for the aforesaid loans, payments and L&S's forgiveness of those loans, were illegitimate, because if the corporations' affair and books were conducted properly, there should be no "cash crisis", and because any "cash crisis" that may exist were due to expenditures and/or liabilities not incurred in the normal conduct of the Companies' business, but rather were the result of recent waste and/or misappropriation of Companies assets/funds on various non-corporate personal liabilities and obligations of defendants and because any cash crises could be alleviated by paying only $200,000.00 to the bank

rather than also paying Lowery, upon information and belief, $388,851.00 paid May 30, 2006.[2]

41. Accordingly, it is necessary for this Honorable Court to preserve the status quo as existent before the aforesaid predicate bad acts of defendants; namely, to temporarily, preliminarily, and permanently enjoin any actions of Lowery as majority stockholder, President and CEO of CASEtech and as majority shareholder and Managing Member of L&S, LLC, until it is revealed and/or determined what should be done with the $891,446.00 of L&S money which he wishes to loan to CASEtech, including temporarily, preliminarily and permanently enjoining any actions or attempts to transfer these monies to CASEtech or to forgive any CASEtech debts to L&S; to order via mandatory injunction the disgorge from and transfer to Mr. Snyder his full 33.33% share of the L&S profits from the sale of the property at 515 Fifth St., SE, Washington, D.C. to temporarily, preliminarily, and permanently enjoin the selling, liquidation and/or disposing of assets of CASEtech and/or L&S pending final disposition of this case; and to temporarily, preliminarily, and permanently enjoin any wasting, misappropriation and/or the selling, liquidation or disposing of CASEtech's or L&S's assets, pending final disposition of this case.

WHEREFORE, plaintiff Michael Snyder requests that this Honorable Court pursuant to, inter alia, SCR-Civil 65, enter an Order that:

---

[2]    Lowery also seems to have "loaned" CASEtech $318,288.00 from L&S during the period March 2005-March 2006 but L&S's books do not show any corresponding asset (like a note).

   i. Temporarily, preliminarily, and permanently enjoins any actions of Lowery, CASEtech and L&S until it is revealed and/or determined who has, or should have, the monies from L&S's share of its property;

   ii. Temporarily, preliminarily, and permanently enjoin the threatened forgiveness of CASEtech debt to L&S; and

   iii. Temporarily and preliminarily enjoin Defendants from selling, secreting, and/or disposing of either CASEtech's and/or L&S's assets pending final disposition of this case;

   iv. Temporarily, preliminarily, and permanently mandate by injunction the disgorge from and transfer to L&S of any monies paid to Lowery by CASEtech under this scheme;

   v. Temporarily, preliminarily, and permanently enjoin Lowery, CASEtech and L&S from wasting and/or misappropriating the assets of the Companies.

   vi. And for such other and further relief as the Court may deem appropriate.

## COUNT II
## BREACH OF FIDUCIARY DUTY[IES]

 42. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-41 of this Complaint.

 43. Defendant Lowery breached his respective fiduciary duty owed to Mr. Snyder as a fellow director, shareholder and officer of the CASEtech by his actions

and inactions aforesaid, including their schemes to obtain an excessive share of the
L&S profits from the sale of it's assets.

44. In addition, Lowery breached his fiduciary duties owed to Mr. Snyder as
a fellow director, shareholder and officer of both CASEtech and L&S by his waste
and/or misappropriation of the assets/monies of the Companies stated on
information and belief aforesaid, including their expenditure of corporate funds on
various non-corporate personal liabilities and family and personal obligations such
as corporate funds expended on purported management of other assets owned by
Lowery; expenditures of corporate funds on lavish non-business vacations;
expenditures of corporate funds on purported "gifts" to family relations; purported
low or nominal-interest "loans" of corporate monies to purchase personal residences
and automobiles; misuse of funds in commercial building management accounts to
landscape and upgrade personal residences; and secret purported "advances",
"bonuses", "salaries" and/or "commissions" to Lowery, all of which were concealed
by him from Mr. Snyder not made in accordance with the By-Laws, and not evident
on the corporations' books controlled by Lowery.

45. Defendant's breach of fiduciary duty[ies] as aforesaid was the direct and
proximate cause of Mr. Snyder's actual damages suffered in the approximate total
amount of $350,000.00 from both L&S and CASEtech.

WHEREFORE, plaintiff Michael Snyder demands judgment against
defendants Lowery, CASEtech and L&S jointly and severally, as follows:

i. Compensatory damages in the sum of $100.000.00 with legal interest thereon for losses from CASEtech;

ii. Compensatory damages in the sum of $211,725.00 with legal interest thereon for Mr. Snyder's share of the profits from selling 515 Second Street by L&S;

iii. Punitive damages in the sum of $1,000,000, each;

iv. And for such other and further relief as the Court may deem appropriate.

## COUNT III
## BREACH OF CONTRACT[S]

46. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-45 of this Complaint.

47. Defendant Lowery and CASEtech and L&S breached their contracts with Mr. Snyder, express and/or implied and including the Stockholders' Agreement and Operating Agreement respectively, by failing and refusing to pay, and still failing and refusing to pay despite demand therefore, Mr. Snyder's actual share of profits from the sale of L&S's property.

48. As direct and consequential results of Lowery's and CASEtech's and L&S's breach[es] of contract[s] aforesaid, Mr. Snyder has sustained damages, suffered in the approximate total amount of $350,000.00 representing the loss of the actual value of CASEtech and the proceeds from the sale of 515 Second St.

WHEREFORE, plaintiff Michael Snyder demands judgment against defendants Lowery, CASEtech and L&S jointly and severally, as follows:

i. Compensatory damages in the sum of $100,000.00 with legal interest thereon from CASEtech;

ii. Compensatory damages in the sum of $211,725 with legal interest thereon for Mr. Snyder's share of the profits from selling 515 Second Street by L&S;

iii. And for such other and further relief as the Court may deem appropriate.

## COUNT IV
## TORTIOUS BREACH OF COVENANT OF
## GOOD FAITH AND FAIR DEALING ARISING OUT OF CONTRACT[S]

49. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-48 of this Complaint.

50. The actions of defendants Lowery, CASEtech and L&S, by the wrongful/retaliatory discharge of Mr. Snyder stated aforesaid, the failing and refusing to pay, and still failing and refusing to pay despite demand therefore, Mr. Snyder's actual share of profits from the sale of L&S's property, breached the covenant of good faith and fair dealing which arises out of contracts.

51. In addition, the actions of Lowery, stated on information and belief aforesaid, including his expenditure of corporate funds on various non-corporate personal liabilities and obligations of the foregoing individuals, such as

expenditures of corporate funds on non-business-related entertainment, residential purchases, and personal purchases; expenditures of corporate funds on family members and friends for "working" for CASEtech; misuse of funds in CASEtech management accounts for diversion to his personal real estate ventures, personal uses, and personal political causes; lavish expenditures on unneeded office space; and upon information and belief, secret purported "advances", "bonuses", "salaries", and/or "commissions" to Lowery concealed by him from Mr. Snyder, not made in accordance with the by-laws and not evident on the corporations' books controlled by Lowery and his brother further constitute breaches of the covenants of good faith and fair dealing arising out of Mr. Snyder's contracts with CASEtech and L&S and/or Lowery, including but not limited to, the Stockholders' Agreement and the Operating Agreement.

60. Defendants' tortious breaches of the covenants of good faith and fair dealing arising out of contract[s] as aforesaid was the direct and proximate cause of Mr. Snyder's actual damages suffered in the approximate total amount of $350,000.00 representing lost value of CASEtech in the sum of $100,000.00 and $211,725.00 for Mr. Snyder's share of the profits from selling 515 Second Street by L&S.

WHEREFORE, plaintiff Michael Snyder demands judgment against defendants Lowery, CASEtech and L&S jointly and severally, as follows:

       i. Compensatory damages in the sum of $311,725.00 with legal

interest thereon;

      ii.  Punitive damages of $1,000,000.00 each

      iii.  And for such other and further relief as the Court may deem

appropriate.

## COUNT V
## WASTE/MISAPPROPRIATION OF CORPORATE ASSETS/FUNDS

52. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-51 of this Complaint.

53. Defendant Lowery, acting individually and not in his capacity as agent or employee of either CASEtech or L&S, did tortiously waste and misappropriate corporate assets, funds, and/or properties, by on information and belief and among other things, expenditures of corporate funds on lavish non-business vacations, non-business entertainment, residential purchases, and personal purchases; expenditures of corporate funds on family members and friends for "working" for CASEtech; misuse of funds in CASEtech management accounts for diversion to his personal real estate ventures, personal uses, and personal political causes; lavish expenditures on unneeded office space; and upon information and belief, secret purported "advances", "bonuses", "salaries", and/or "commissions" to Lowery concealed by him from Mr. Snyder, not made in accordance with the by-laws and not evident on the corporations' books controlled by Lowery and his brother all of which were concealed by him from Mr. Snyder not made in accordance with the By-Laws, and not evident on the corporations books controlled by Lowery.

54. Defendant's waste/misappropriation of corporate assets and properties aforesaid was the direct and proximate cause of Mr. Snyder's actual damages suffered in the approximate total amount of actual damages suffered in the amount of $700,000.00 representing the loss of the actual value of CASEtech of at least $3,500,000.00.

WHEREFORE, plaintiff Michael Snyder demands judgment against defendants Lowery, CASEtech and L&S jointly and severally, as follows:

      i. Compensatory damages in the sum of $700,000.00 with legal interest thereon;

      ii. Punitive damages of $1,000,000.00 each

      iii. Attorney's fees of $50,000.00 and

      iv. For such other and further relief as the Court may deem appropriate.

## COUNT VII
## FRAUD

55. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-54 of this Complaint.

56. Defendant Lowery induced Mr. Snyder to agree to sell the property at 515 Second St. that L&S, LLC owned and invest the proceeds in to CASEtech all on the promises, representations, covenants, and agreements of Mr. Lowery that he would not invest more monies in CASEtech than was necessary to repay the bank which was, upon information and belief, pressing CASEtech for repaying of a $200,000.00 loan; that Lowery would disburse the remaining funds to himself and Mr. Snyder in accordance with their ownership percentages in L&S (1/3 for Mr. Snyder and 2/3 for Mr. Lowery); and that any other monies provided to CASEtech would be provided by Lowery and Snyder in the same proportion as their ownership of CASEtech (80% and 20% respectively).

57. Said promises and representations by Lowery were false when made, and known by him to be false, in that Lowery knew and/or intended that the L&S would lend CASEtech the full $891,456.00 L&S realized from the sale of its property and that there would be no alternation in the percentages to take into account the different ownership percentages Mr. Snyder held in CASEtech and L&S, that said payments would be made to CASEtech for Lowery's own inequitable personal aggrandizement such that Mr. Snyder would subsidize Mr. Lowery's debts, and said promises and representations by Lowery were willingly, wantonly, tortiously and maliciously made to induce Mr. Snyder to personally pay subsidize CASEtech's indebtedness to Lowery.

58. Mr. Snyder had a right to rely on the promises and representations aforesaid of Lowery as President and a Director of CASEtech and as Operating Manager of L&S, LLC and Mr. Snyder did rely on such promises and representations to his detriment; namely, Mr. Snyder signed a document permitting L&S to sell the property at 515 Second St. and invest the proceeds in CASEtech in reliance on Lowery's promises and representations that Mr. Snyder would be repaid such sums.

59. As a result of said defendant's false promises and representations aforesaid, upon which Mr. Snyder had a right to rely and did rely, Mr. Snyder has sustained damages, including the loss of the $211,725.00 mis-allocated by Lowery to CASEtech, for which Mr. Snyder has not been paid as promised and represented by said defendants and the excess amount of money mis-invested in CASEtech by

Lowery in violation of his promises.

WHEREFORE, plaintiff Michael Snyder, demands judgment against defendants Lowery, CASEtech and L&S, jointly and severally, as follows:

i.  Compensatory damages in the sum of $211,725.00 with legal interest thereon;

ii.  Repayment of the excess monies invested in CASEtech by Lowery which were then directed to repay Lowery himself;

iii.  Punitive damages in the sum of $1,000,000, each;

iv.  Legal fees of $50,000.00

v.  And for such other and further relief as the Court may deem appropriate.

## COUNT VII
### UNJUST ENRICHMENT

60.  Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-59 of this Complaint.

61.  Despite Mr. Snyder's entitlement to his share of the proceeds from the sale of L&S's property, L&S has failed and refused to pay to Mr. Snyder the approximately $211,725.00 of Mr. Snyder's money that Lowery loaned to CASEtech to release indebtedness on loans made for the benefit of CASEtech and Lowery personally.

62.  Defendants have been unjustly enriched by their actions aforesaid by

Page 21 of  29

failing and refusing to pay to Mr. Snyder the approximately $211,725.00 of Mr.

Snyder's money that Lowery loaned to CASEtech to release indebtedness on loans

made for the benefit of CASEtech and Lowery personally.

WHEREFORE, plaintiff Michael Snyder demands judgment against

defendants jointly and severally, as follows:

i. Compensatory damages in the sum of $211,725.00 with legal

interest thereon;

ii. Punitive damages in the sum of $1,000,000;

iii. And for such other and further relief as the Court may deem

appropriate.

## COUNT VIII
## TROVER AND CONVERSION

63. Plaintiff realleges and incorporates herein by reference the allegations of

paras. 1-62 of this Complaint.

64. Lowery and CASEtech, wrongfully, maliciously, tortiously, wantonly,

and with ill-will and willful disregard of Mr. Snyder's rights, sought to and has

exercised complete control and ownership of Mr. Snyder's share of the profits from

the sale of 515 Second Street and Mr. Snyder's share of the benefits as an officer of

CASEtech and did thereby deprive Mr. Snyder of his profits from the growth of

CASEtech.

65. Lowery did and has converted to his own and/or CASEtech's use and

benefit, Mr. Snyder's monies which Mr. Snyder advanced to CASEtech for his own satisfaction and gain and with evil and rancorous motive influenced by hate or ill-will, his purpose being to deliberately and willfully injure Mr. Snyder.

66. Defendants trover and conversion aforesaid was the proximate cause of Mr. Snyder's actual damages suffered in the approximate total amount of $211,725.00 representing the loss of the loss owed Mr. Snyder.

WHEREFORE, plaintiff Michael Snyder demands judgment against defendants Lowery and CASEtech jointly and severally, as follows:

i. Compensatory damages in the sum of $211,725.00 with legal interest thereon;

ii. Punitive damages in the sum of $1,000,000, each;

iii. And for such other and further relief as the Court may deem appropriate.

## COUNT IX
## DECLARATORY RELIEF

67. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-66 of this Complaint.

68. As a party to the CASEtech Stockholders' Agreement, and as the owner rightfully of 20% of the issued and outstanding shares of stock in CASEtech, Mr. Snyder is accorded and entitled to 20% ownership of CASEtech, 20% of the voting rights of CASEtech stockholders, and 20% of any dividends, sales and/or other

profits that may inure to the stockholders' benefits.

69. As a party to the L&S Operating Agreement, and as the owner rightfully of 1/3 of L&S, LLC, Mr. Snyder is accorded and entitled to 1/3 ownership of L&S, 1/3 of the voting rights of L&S stockholders, and 1/3 of any dividends, sales and/or other profits that may inure to the members' benefits.

70. As stated aforesaid, Lowery, CASEtech and L&S breached the Stockholders' Agreement and Operating Agreement (respectively) with Mr. Snyder, and other contracts express and/or implied, by the wrongful/retaliatory discharge of Mr. Snyder stated aforesaid, the failing and refusing to pay, and still failing and refusing to pay despite demand therefor, Mr. Snyder's fair share of the L&S proceeds from the sale of L&S property, which Lowery and L&S improperly used to release CASEtech from indebtedness on loans made for the benefit of CASEtech as was agreed and which agreement was performed by Mr. Snyder.

71. Also as stated aforesaid, Lowery committed numerous breaches of fiduciary duties owed to Mr. Snyder did induce both CASEtech and L&S to breach their contract[s] and the implied covenants thereof of good faith and fair dealing with Mr. Snyder, committed waste/misappropriation of corporate assets and trover and conversion of commissions owed to Mr. Snyder, and tortiously interfered with contract[s] and/or prospective business advantage solely for Lowery's own benefit.

72. The foregoing acts of Lowery and CASEtech and L&S were all part of the scheme, stated on information and belief, for Lowery to pay himself approximately $800,000.00 from CASEtech of which $211,725.00 was rightfully

Mr. Snyder's by inducing Mr. Snyder by trickery to contribute an unsecured equitable investment to CASEtech. An equitable investment that Mr. Lowery knew would never be repaid.

73. As a party to the CASEtech Stockholders' Agreement, and to the L&S Operating Agreement, Mr. Snyder is entitled to declaration of his rights thereunder, and declaration that those provisions of the Stockholders' Agreement obligating Mr. Snyder to permit Mr. Lowery to reimburse himself at Mr. Snyder's expense are unenforceable.

WHEREFORE, plaintiff Michael Snyder, pursuant to SCR-Civil 57, requests that this Honorable Court enter a decree that:

i. Declares that defendants Lowery and CASEtech as of September 18, 2006, have materially breached the Shareholders' Agreement, such that the Court

ii. Declares that defendants Lowery and CASEtech as of September 18, 2006, cannot enforce those provisions of the Stockholders' Agreement obligating Mr. Snyder;

iii. Declares that defendants Lowery and L&S, as of September 18, 2006, have materially breached the Operating Agreement, such that the Court

iv. Declares that defendants Lowery and L&S as of September 18, 2006, cannot enforce those provisions of the Operating Agreement obligating Mr. Snyder

v. Pursuant to SCR - Civil 57, orders a speedy hearing of this action

Page 25 of 29

and advances it on the Court's docket; And for such other and further relief as the Court may deem appropriate.

## COUNT X
## ACCOUNTING AND EQUITABLE LIEN/CONSTRUCTIVE TRUST

74. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-73 of this Complaint.

75. Despite Mr. Snyder's entitlement to payment for his share of CASEtech, CASEtech has failed and refused to pay to Mr.Snyder the approximately $211,725.00 that Mr. Snyder "invested" in CASEtech from the proceeds of L&S's sale of its property so that CASEtech could release its indebtedness on loans made for the benefit of CASEtech.

76. It is necessary for this Honorable Court to order defendants to account for all receipts, expenditures, and distributions on their accounts, and to compel the production of all books, records or other information concerning monies to which Mr. Snyder is rightfully entitled.

77. As a party who performed services for, and incurred indebtedness on behalf of CASEtech and L&S, the reasonable value of which has not been fully compensated by either CASEtech or L&S, Mr. Snyder is entitled to an equitable lien or constructive trust on the assets of defendants in such amount[s] as may be due and rightfully belonging to Mr. Snyder.

WHEREFORE, plaintiff Michael Snyder requests that this Honorable Court

enter a decree that:

      i. Orders defendants to account for all receipts, expenditures, and distributions on their accounts for the period from January 1, 2000, through and including the present;

      ii. Orders defendants to produce all books, records or other information concerning distributions and/or monies to which Mr. Snyder is rightfully entitled;

      iii. Requires defendants to remit to Mr. Snyder the balance of any such distributions and/or monies to which Mr. Snyder is rightfully entitled;

      iv. Creates an equitable lien and/or constructive trust upon the assets of defendants Lowery, CASEtech and L&S in favor of Mr. Snyder for all sums due to the plaintiff;

      v. And for such other and further relief as the Court may deem appropriate.

## COUNT XI
## JUDICIAL DISSOLUTION OF L&S, LLC

78.   Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-77 of this Complaint.

79.  L&S is in *de facto* dissolution but without appropriate arrangements being made to protect the interests of the minority Shareholder, Mr. Snyder.

80.  The business and affairs of the Company are no longer being carried out

by the majority shareholder, Lowery, to the detriment of all shareholders, especially the minority shareholder, Mr. Snyder.

81. Under these circumstances, Mr. Snyder is entitled to a judicial dissolution of the company pursuant to D.C. Code §29-1048.

WHEREFORE, plaintiff Michael Snyder requests that this Honorable Court enter judgment in his favor and against all Defendants and that this Court

i. Directs the judicial dissolution of the Company;

ii. Imposes upon the Company the procedures for judicial dissolution;

iii. Directs that the procedures for judicial dissolution be implemented by the Company, with the involvement of a receiver, if necessary;

iv. Award Plaintiff his attorney's fees and costs of this action; and

v. Award such other and further relief as justice may require.

Dated:   December 22, 2006

Michael Snyder,
By Counsel

KAUFMAN LAW, A Professional Corporation
11350 Random Hills Rd. Suite 800
Fairfax, VA 22030
703.764.9080
703.764-0014 (fax)
David@dzklaw.com
Counsel for Plaintiff

By: _____
David Kaufman, Bar # 435123

Page 28 of 29

VERIFICATION


Michael Snyder, being first duly sworn on oath according to law, deposes and says that he is the Plaintiff in this action, and that he has read the foregoing Complaint, and that he verily believes the facts stated therein to be true, and the matters and things stated upon information and/or belief he verily believes to be true to the best of his knowledge, information and belief, and that the foregoing Complaint is a correct statement of the amounts owed by defendants to plaintiff, exclusive of all set-offs and just grounds of defense, if any.


Michael Snyder


Subscribed and sworn to before me this 20th day of

December_____, 2006.

Notary Public

My Commission expires: 2/28/2010

Sean A. Weston
Notary Public, District of Columbia
My Commission Expires 2-28-2010

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Michael Snyder | Dale Lowery, CASEtech, Inc. and L&S Real Estate LLC |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Montgomery, MD___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___Washington, D.C.___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David Zachary Kaufman,
KAUFMAN LAW, A Professional Corporation
11350 Random Hills Rd. Suite 800
Fairfax, VA 22030
703.764.9080
703.764-0014 (fax)

ATTORN

CASE NUMBER   1:06CV02213

JUDGE: James Robertson

DECK TYPE: Contract

DATE STAMP: 12/27/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1. U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant
◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP (
FOR PLAINTIFF AND O)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ◉ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☒ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Plaintiff is suing in Diversity under 28 USC 1331 for violations of his shareholders' agreement (contract) and fraud.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ $2,500,000.00    Check YES only if demanded in complaint
JURY DEMAND:    YES ☐    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE December 26, 2006.    SIGNATURE OF ATTORNEY OF RECORD    D.Z. Kaufman

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT    (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.