IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SNYDER,                    :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :    Case No. 1:06CV02213
                                   :    JUDGE: James Robertson
DALE LOWERY, et al.,               :
                                   :
        Defendant.                 :
_____:

## MOTION FOR RULE 11 SANCTIONS

Defendants Dale Lowery, et al., by and through counsel, hereby move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.  The claims alleged in the Complaint filed herein are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law, and are therefore violative of Rule 11(b)(2).  Moreover, the allegations in the Complaint are directly contradicted by terms of the Funding Allocation Agreement executed by Plaintiff Michael Synder and otherwise lack evidentiary support, and are therefore violative of Rule 11(b)(3).

In support hereof, Defendants refer to the Memorandum of Points and Authorities attached hereto and incorporated herein.

Respectfully  submitted,

COOTER,  MANGOLD,  TOMPERT
 & KARAS, L.L.P.


_____/s/_____
Dale A. Cooter, #277454
James E. Tompert, #358952
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015
(202)537-0700
efiling@cootermangold.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SNYDER,                    :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :    Case No. 1:06CV02213
                                   :    JUDGE: James Robertson
DALE LOWERY, et al.,               :
                                   :
        Defendant.                 :
_____:

### RULE 11(c)(1)(A) CERTIFICATION

Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Civil Procedure, more than twenty-one days before this Motion and Memorandum were filed with the Court, they were served on counsel for Plaintiff, who has refused to withdraw or appropriately correct the Complaint filed herein.  Instead, counsel for Plaintiff has served Initial Disclosures on counsel for Defendants, which do not comply with Rule 26(a)(1) of the Federal Rules of Civil Procedure.


                    COOTER, MANGOLD, TOMPERT
                     & KARAS, L.L.P.


                    _____/s/_____
                    Dale A. Cooter, #277454
                    James E. Tompert, #358952
                    5301 Wisconsin Avenue, N.W.
                    Suite 500
                    Washington, D.C. 20015
                    (202)537-0700
                    efiling@cootermangold.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SNYDER,                        :
                                       :
        Plaintiff,                     :
                                       :
v.                                     :    Case No. 1:06CV02213
                                       :    JUDGE: James Robertson
DALE LOWERY, et al.,                   :
                                       :
        Defendant.                     :
_____:

### MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

    Defendants Dale Lowery ("Lowery"), et al., by and through
counsel, hereby submit this Memorandum in Support of their
Motion for Sanctions and state as follows:

### FACTUAL BACKGROUND

    On November 5, 2005, Plaintiff Michael Snyder ("Synder")
and Defendant Lowery executed a document entitled Funding
Allocation Agreement ("Funding Agreement").  Exhibit A,
hereto.  In that agreement Synder and Lowery agreed to the
distribution of the proceeds from the sale of certain real
property located at 515 Second Street, N.E. in Washington,
D.C. ("the Second Street Property") owned by Defendant L&S
Real Estate, LLC ("L&S").  L&S is a limited liability company
organized and operated in the District of Columbia.  Snyder
has had a 1/3 ownership interest in L&S and Lowery has had the
remaining 2/3 ownership interest.  In addition to L&S, Lowery

2

and Snyder were also shareholders in Defendant CASEtech, Inc. ("CASEtech"), a Delaware corporation with its principal place of business in the District of Columbia.  Synder has owned 20% of the stock in CASEtech and Lowery has owned the remaining 80% of the stock.

At the time the Funding Agreement was executed, the Second Street property was for sale, significant proceeds from the sale were expected and CASEtech had run up significant business debts.  Exhibit A.  As Snyder alleged in his Complaint, he knew that the Second Street property was for sale and agreed to the sale of the property.  Complaint at ¶¶ 22 and 23.  He even acknowledged in the Funding Agreement that it was in his best interest, the best interest of CASEtech and the best interest of L&S that "the proceeds be used to reduce the overall levels of indebtedness [of CASEtech] in accordance with the terms hereof."  Exhibit A.  As set forth in the Funding Agreement, Synder agreed to the distribution of the proceeds from the sale of the Second Street property in the following manner:

FIRST.  To pay the costs of the sale.

SECOND.  To pay the existing mortgages on the Second Street   property.

THIRD.  "[T]o contribute to the capital of" CASEtech (in proportions equal to the ownership interests in L&S, i.e., 66.7% for Lowery and 33.3% to Snyder) "the amount

3

necessary to pay off all short and long term debt of the Corporation," which "consists primarily of (A) the major part of a $200,000.00 line of credit owed to the National Capital Bank; and (B) monies used for operating capital and secured by 816 North Carolina Avenue, a private residence owned by Dale E. Lowery."

FOURTH.  Any remaining funds "after satisfaction of the above obligations shall be distributed" in accordance with ownership interests in L&S, i.e., 66.7% to Lowery and 33.3% to Snyder.

Id.

On May 26, 2006, the Second Street property sold for $1,800,000.  Exhibit B.  The proceeds from that sale were distributed in accordance with the terms of the Funding Agreement.  See Exhibits B and C.  First, the costs of the sale were paid.  Exhibit B.  Second, the existing mortgage was paid.  Id. (the mortgage loan to Washington First Bank in the amount of $802,120.58 was paid off).  Third, the short and long term debt of CASEtech was paid.  Exhibit C.  Fourth, the remaining funds were distributed 66.7% to Lowery and 33.3% to Snyder.  Id.  Snyder received the sum total of $107,844.06 ($22,416.47 for deferred salary and $85,427.59 for his 33.33% share).

Even though Snyder agreed to the distribution of the proceeds from the sale as set forth above and received $107,844.06 in proceeds therefrom, after the distribution was made, he objected to the sale and asserted that the

4

outstanding debt should have been paid last after a one-third/two-third spilt of the proceeds.  Thereafter, Snyder filed his Complaint herein.

In the Complaint, Snyder alleges eleven different causes of action, which are based on Snyder's assertion that the proceeds from the sale of the Second Street property should have been disbursed in a manner other than what is set forth in the Funding Agreement.  As explained below, the claims in the Complaint are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law and the allegations in the Complaint lack evidentiary support.

### ARGUMENT

Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part, that a lawyer, by signing a pleading, certifies "to the best of the person's knowledge, formed after an inquiry reasonable under the circumstances," that, among other things, the allegations in the pleadings have evidentiary

support and that the claims in a complaint are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal thereof.  Fed.R.Civ.P. 11(b)(2) and (3).  In this regard, Rule 11(b)(2) provides that "the claims

. . . are warranted by existing law or by a nonfrivolous
argument for the extension, modification, or reversal of
existing law or the establishment thereof.  Fed.R.Civ.P.
11(b)(2).  Rule 11(b)(3) also provides that:

> . . . the allegations and other factual contentions have
> evidentiary support or, if specifically so identified,
> are likely to have evidentiary support after a reasonable
> opportunity for further investigation or discovery.

Fed.R.Civ.P. 11(b)(3).  As explained below, the allegations in
the Complaint and the claims therein are violative of both
Rule 11(b)(2) and Rule 11(b)(3).

## COUNT I
## (INJUNCTIVE RELIEF)

The injunctive relief sought by Plaintiffs is barred
because Defendants complied with the terms of the Funding
Agreement.  Moreover, Plaintiff has not alleged the elements
of injunctive relief and has not made any allegations that
those elements have been satisfied.  See Complaint at ¶40; see
also Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group,
Inc., 295 F.Supp.2d 75, 81 (D.D.C. 2003) (the elements are
whether "(1) there is a substantial likelihood plaintiff will
succeed on the merits; (2) plaintiff will be irreparably
injured if an injunction is not granted; (3) an injunction
will substantially injure the other party; and (4) the public
interest will be furthered by an injunction.") (citing

6

Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 360 (D.C.
Cir. 1999); Serono Lab v. Shalala, 158 F.3d 1313, 1317-18
(D.C. Cir. 1998)).  Moreover, all of these requests are barred
for the simple reason that even if Snyder is right, which he
is not, then he has a remedy at law for damages, and is not
entitled to injunctive relief.  Black River Valley Broadcasts
v. McNinch, 101 F.2d 235, 238 (D.C. Cir. 1938) (proceeding in
equity for injunction cannot be maintained where complaining
party has remedy at law).  Furthermore, in his request for
injunctive relief Snyder does not seek to preserve the status
quo, but rather seeks to have this Court order fundamental
changes in the business operations of CASEtech and L&S, yet
the Complaint is devoid of allegations to support such relief.
See Bancoult v. McNamara, 227 F.Supp.2d 144, 151 (D.D.C. 2002)
(party who seeks injunction "to change (rather than preserve)
status quo must meet a higher standard than in the ordinary
case by showing 'clearly' that he or she is entitled to relief
or that 'extreme or very serious damage' will result from
denial of the injunction") (quoting Veitch v. Danzig, 135
F.Supp.2d 32, 35 (D.D.C. 2001).  For instance, Snyder seeks to
"enjoin any actions of Lowery as majority stockholder,
President and CEO of CASEtech and as majority shareholder and
Managing Member of L&S, LLC."  Complaint at ¶41.  He wants "to

order via mandatory injunction the disgorge from and transfer to Mr. Synder his full 33.33% share of the L&S profits from the sale of the" Second Street property.  <u>Id</u>.  He also wants to enjoin "the selling, liquidation and/or disposing of assets of CASEtech and/or L&S pending final resolution of this case." <u>Id</u>.  The allegations in the Complaint do not support such broad and comprehensive relief.  <u>Bancoult</u>, 227 F.Supp.2d at 151.

**COUNT II**
**<u>(Breach of Fiduciary Duties)</u>**

Count II for breach of fiduciary duty is barred because Defendants have complied with the terms of the Funding Agreement.  Moreover, Lowery "as a fellow director, shareholder and officer" of CASEtech and L&S does not owe a fiduciary duty directly to Synder.  To the extent that he has a fiduciary duty, he has a duty to CASEtech and L&S, and not to Snyder.  <u>See</u> <u>McKay v. Washington</u>, 226 F.2d 35, 44 (1955) (directors and officers of a corporation have a fiduciary duty to the corporation).  Since there are no derivative allegations in the Complaint, Count II is not well grounded in law.  <u>Cowin v. Bresler</u>, 741 F.2d 410, 414 (D.C. Cir. 1984) ("Claims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers harm

8

independently of that visited upon corporation and other shareholders"). Synder also ignores the business judgment rule, which protects Lowery from management disputes such as the one that Snyder has tried to concoct. See Gabelli & Co. v. Ligget Group, Inc., 479 A.2d 276, 289 (Del. 1984) (declaration and payment of a dividend is within the discretion of a company's board of directors under Delaware law in exercise of business judgment rule).

Finally, there is no basis whatsoever for the request for punitive damages. United Mine Workers of America, Int'l Union v. Moore, 717 A.2d 332, 341 (D.C. 1998)(reversing punitive damages award, the Court found that "[w]hile UMWA's behavior was discriminatory, the record before us lacks any showing, by clear and convincing evidence, of malicious, wanton, reckless or willful actions on the part of UMWA"); Boynton v. Lopez, 473 A.2d 375, 377-378 (D.C. 1984)("[t]he tortious act must be 'willful and outrageous conduct.' Spar v. Obwoya, 369 A.2d [173,] 180 [D.C. 1977](quoting Harris v. Wagshal, 343 A.2d 283, 288 (D.C. 1975), or it must result in gross fraud. Spar v. Obwoya, supra, 369 A.2d at 180"); BWX Electronics, Inc. v. Control Data Corp., 929 F.2d 707, 712 (D.C. Cir. 1991)(observing that "several District of Columbia cases have held that proof of fraud alone, unaccompanied by aggravating

circumstances, is not sufficient to justify punitive damages"). Snyder has not alleged any specific facts in accordance with the foregoing case law which entitle him to an award of punitive damages.

### COUNT III
### (Breach of Contract)

There can be no breach of either the Stockholder's Agreement or the Operating Agreement because Defendants have complied with the terms of the Funding Agreement. The claim also fails because Snyder has not identified any term of either contract that Lowery has breached. <u>Bemberry v. District of Columbia</u>, 758 A.2d 518, 520 (2000) ("a breach of contract is an unjustified failure to perform what is promised in a contract").

### COUNT IV
### (Tortious Breach of Covenant of Good Faith and Fair Dealing)

If Snyder's claim for breach of contract fails, his claim for breach of the covenant of good faith and fair dealing must also fail. It must also fail for the additional reason that there can no breach of the covenant of good faith and fair dealing in the abstract. There can only be a breach of the covenant of good faith and fair dealing when there is a breach of any express term or condition of a contract. <u>Parker v. Columbia Bank</u>, 91 Md.App. 346, 604 A.2d 521, 531 (1992).

10

Since Snyder has not alleged any such term, he cannot allege a claim for breach of the covenant of good faith and fair dealing.  <u>Id</u>.

Also, as set forth above, there is no basis for the request for punitive damages.  <u>Moore</u>, 717 A.2d at 341; <u>Boynton</u>, 473 A.2d at 377-378; <u>Spar</u>, 369 A.2d at 180; <u>BWX Electronics</u>, 929 F.2d at 712.

**COUNT V**
**<u>(Waste/Misappropriation of Corporate Assets/Funds)</u>**

A claim for corporate waste/misappropriation, to the extent that such a claim even exists, must be a derivative claim, brought by and behalf of the corporation that was damaged.  <u>Cowin</u>, 741 F.2d at 414.  Since Count V was not pled as a derivative claim, it was not warranted by existing law and should be dismissed.  <u>Id</u>.

Also, the evidence will show that the allegation by Snyder that purported actions of corporate waste and misappropriation were concealed from him is belied by the fact that Snyder had full and complete access to the books and records of both companies, and prior to his execution of the Funding Agreement even took the books and records home to review them.

Moreover, as set forth above, there is no basis for an

11

award of punitive damages.  <u>Moore</u>, 717 A.2d at 341; <u>Boynton</u>, 473 A.2d at 377-378; <u>Spar</u>, 369 A.2d at 180; <u>BWX Electronics</u>, 929 F.2d at 712.  There is also no basis for an award of attorneys' fees.  <u>Answering Service, Inc. v. Egan</u>, 728 F.2d 1500, 1503 (D.C. Cir. 1984) ("as a general rule, attorneys' fees and expenses incurred by party in the successful litigation of a claim are not recoverable as damages absent a contractual or statutory basis for liability").  As counsel for Snyder should know, Snyder is not entitled to an award of attorneys' fees absent an express contractual provision for attorneys' fees, and in this case, there is no such contractual term in the Funding Agreement or any other contract, which would allow for a recovery of attorneys' fees by Snyder.  <u>Id</u>.

### COUNT VII
### [misnumbered: there is no Count VI]
### <u>(Fraud)</u>

Count VII for fraud is barred because of the terms and conditions of the Funding Agreement, which Snyder agreed to. <u>Landa v. Astin</u>, 193 F.2d 369, 371 (D.C. Cir. 1951) ("competent persons shall have utmost liberty of contracting and their agreements voluntarily and fairly made shall be held valid and enforced in the courts") (<u>quoting</u> <u>Twin City Pipe Line Co. v. Harding Glass Co.</u>, 283 U.S. 353, 356-57 (1931)).  Also, there

12

is no clear and convincing evidence of fraud in this case. See <u>Atraqchi v. GUMC Unified Billing Services</u>, 788 A.2d 559, 563 (D.C. 2002) (citations omitted) (each element of fraud must be proven by clear and convincing evidence); <u>see also</u> <u>Redmond v. Birkel</u>, 933 F.Supp. 1, 3 (D.D.C. 1996) (fraud is never presumed; if there is a lack of proof as to any one element, the fraud claim must fail).  There are no allegations that Snyder was coerced in any way to sign the Agreement.  Nor can there be, because Snyder had a full and fair opportunity to review the terms of the Agreement, make any investigation he thought was necessary concerning the indebtedness of CASEtech and had a full and fair opportunity to review the books and records of CASEtech.  Also, as discovery in this case will demonstrate, the allegation in the Complaint that Lowery represented to Snyder that he would not invest more monies in CASEtech than was necessary to pay the $200,000 loan, is patently false.  It is also belied by the terms of the Funding Agreement itself, which state CASEtech "has run up significant business debts" and the proceeds from the sale of the Second Street property would be used "to pay off all short and long term debt of the Corporation," which "consists primarily of (A) the major part of a $200,000.00 line of credit owed to the National Capital Bank; and (B) monies used

13

for operating capital and secured by 816 North Carolina
Avenue, a private residence owned by Dale E. Lowery."  Exhibit
A.

Moreover, as set forth above, there is no basis for an
award of punitive damages.  Moore, 717 A.2d at 341; Boynton,
473 A.2d at 377-378; Spar, 369 A.2d at 180; BWX Electronics,
929 F.2d at 712.  There is also no basis for an award of
attorneys' fees.  Egan, 728 F.2d at 1503.

## COUNT VII
### (Unjust Enrichment)

There can be no unjust enrichment when Defendants have
complied with the terms and conditions of the Funding
Agreement, which Snyder agreed to.  Landa, 193 F.2d at 371;
Harding Glass, 353 U.S. at 356-57.  There also can be no
unjust enrichment when the proceeds of the sale of the Second
Street property were used to pay off debt of CASEtech, in
which Snyder was a 20% shareholder.  Rapaport v. U.S. Dept. Of
Treasury, 59 F.3d 212, 217 (D.C. Cir. 1995) (where the only
"benefit" to the defendant is that it retains monies required
to be paid under a contract, there has been no "benefit" as
required for an unjust enrichment claim), cert. denied, 516
U.S. 1073 (1996).

Also, as set forth above, there is no basis for an award

14

of punitive damages.  <u>Moore</u>, 717 A.2d at 341; <u>Boynton</u>, 473
A.2d at 377-378; <u>Spar</u>, 369 A.2d at 180; <u>BWX Electronics</u>, 929
F.2d at 712.

## COUNT VIII
## (Trover and Conversion)

There can be no trover or conversion where Defendants
have  complied with the terms and conditions of the Funding
Agreement, which Snyder agreed to.  <u>Landa</u>, 193 F.2d at 371;
<u>Harding Glass</u>, 353 U.S. at 356-57.  There also can be no
trover or conversion when the proceeds of the sale of the
Second Street property were used to pay off debt of CASEtech,
in which Snyder was a 20% shareholder.

Also, as set forth above, there is no basis for an award
of punitive damages.  <u>Moore</u>, 717 A.2d at 341; <u>Boynton</u>, 473
A.2d at 377-378; <u>Spar</u>, 369 A.2d at 180; <u>BWX Electronics</u>, 929
F.2d at 712.

## COUNT IX
## (Declaratory Relief)

Snyder is not entitled to any declaratory relief when
Defendants have complied with the terms and conditions of the
Funding Agreement, which Snyder agreed to.  <u>Landa</u>, 193 F.2d at
371; <u>Harding Glass</u>, 353 U.S. at 356-57.  Declaratory relief is
also not available when there has been compliance with the
business judgment rule and when the proceeds of the sale of

the Second Street property were used to pay off debt of
CASEtech, in which Snyder was a 20% shareholder.  As such,
there is no basis for a declaratory judgment in this case.
Fitts v. Federal Nat. Mortg. Ass'n, 44 F.Supp.2d 317, 330
(D.D.C. 1999) ("A request for declaratory judgment constitutes
a form of relief, not a cause of action").

## COUNT X
### (Accounting and Equitable Lien/Constructive Trust)

For all of the reasons set forth above, Snyder is not
entitled to an accounting, equitable lien or constructive
trust.  Moreover, he is not entitled to an equitable lien or
constructive trust because the distribution of the proceeds
from the sale of the Second Street property has already been
made, a fact well known to Snyder, who willingly accepted his
share of the proceeds therefrom.

## COUNT XI
### (Judicial Dissolution of L&S, LLC)

Finally, there is no basis for a claim for judicial
dissolution of L&S.  Just because Snyder disagrees with the
management of L&S, even though he consented to the terms of
the Funding Agreement, does not mean that L&S should be
dissolved.  Moreover, there are no allegations in the
Complaint that the requirements for judicial dissolution of a
limited liability company set forth in Sections 29-1047 and

16

29-1048 of the D.C. Code have been satisfied.  D.C. Code. Ann.
§§29-1047 and 29-1048 (2001).

WHEREFORE, Defendants Dale Lowery, <u>et al</u>., respectfully
request that their Motion for Sanctions be granted, that they
be awarded attorneys' fees and the costs of this action.


                        Respectfully  submitted,

                        COOTER,  MANGOLD,  TOMPERT
                         & KARAS, L.L.P.


                        _____/s/_____
                        Dale A. Cooter, #277454
                        James E. Tompert, #358952
                        5301 Wisconsin Avenue, N.W.
                        Suite 500
                        Washington, D.C. 20015
                        (202)537-0700
                        efiling@cootermangold.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 26th day of April 2007, a copy of the foregoing **MOTION, MEMORANDUM, ORDER and EXHIBITS** was filed electronically pursuant to the Electronic Case Filing procedures of the United States District Court of the District of Columbia and sent by electronic mail to:

David Z. Kaufman, Esq.
KAUFMAN LAW, P.C.
11350 Random Hills Road
Suite 800
Fairfax, VA 22030
David@dzklaw.com


_____/s/_____
Dale A. Cooter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SNYDER,                    :
                                  :
        Plaintiff,                :
                                  :
v.                                :      Case No. 1:06CV02213
                                  :      JUDGE: James Robertson
DALE LOWERY, <u>et al</u>.,       :
                                  :
        Defendant.                :
_____:

## PROPOSED ORDER

Upon consideration of the Motion for Sanctions filed by Defendants Dale Lowery, <u>et al</u>., and the opposition thereto, it is this _____ day of _____ 2007, hereby

ORDERED, that said Motion is granted, and it is further

ORDERED, that sanction in the amount of $_____ are hereby imposed against Plaintiff Michael Snyder and David Z. Kaufman, Esq. for violation of Fed. R. Civ. P. 11(b)(2) and Fed. R. Civ. P. 11(b)(3).


_____
United States District Court


Copies to:

Dale A. Cooter, Esq.
COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015

David Z. Kaufman, Esq.
KAUFMAN LAW, P.C.
11350 Random Hills Road
Suite 800
Fairfax, VA 22030

# EXHIBIT A

THIS FUNDING ALLOCATION AGREEMENT is made as of this 4th day of November, 2005, and is by and between Dale E. Lowery and I. Michael Snyder, stockholders of CASEtech, Incorporated, a Delaware corporation having a principal business address of 621 Pennsylvania Avenue, S.E., Washington, D.C. (the "Corporation"); and also partners in L&S Real Estate, LLC, having the same principal business address ("L&S" or the "LLC").

WHEREAS, the L&S property known as 515 Second Street N.E. is for sale and significant proceeds are expected, and

WHEREAS, the Corporation has run up significant business debts, and

WHEREAS, much of the original capital for L&S was obtained from the Corporation,

WHEREAS, the parties hereto recognize that it is in the best interests of themselves, the Corporation, and the LLC that the proceeds be used to reduce overall levels of indebtedness in accordance with the terms hereof.

### WITNESSETH:

NOW, THEREFORE, Dale E. Lowery and I. Michael Snyder (the "Partners") agree to devote the proceeds from the sale of 515 Second Street N.E. to the following purposes:

FIRST, to pay the costs of the sale. These costs consist of taxes, recordation fees, brokers' fees, and other such fees as are a normal component of real estate transactions.

SECOND, to pay off existing mortgages on 515 Second Street, N.E.

THIRD, to contribute to the capital of the Corporation (in the proportions set forth in Article Fourth below) the amount necessary to pay off all short and long term debt of the Corporation. This debt consists primarily of (A) the major part of a $200,000.00 line of credit owed to the National Capital Bank; and (B) monies used for operating capital and secured by 816 North Carolina Avenue, S.E., a private residence owned by Dale E. Lowery.

FOURTH, any funds remaining after satisfaction of the above obligations shall be distributed to the Partners without encumbrance according to their relative ownership interests in L&S, i.e. 66.7% to Dale E. Lowery and 33.3% to I. Michael Snyder.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement under seal as of the date first hereinabove written.

Dale E. Lowery, Ph.D.                                    I. Michael Snyder

# EXHIBIT B

p 27 07 07:53p    CASEtech, Inc.    202-543-3181    p.2

# A. Settlement Statement

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265



| B. Type of Loan | | | | | |
|---|---|---|---|---|---|
| 1.☐ FHA  2.☐ RHS  3.☐ Conv. Unins.<br>4.☐ VA  5.☐ Conv. Ins. | | | 6. File Number<br>06-206 | 7. Loan Number | 8. Mortgage Insurance Case Number |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| The Computing Technology Industry Association, Inc.<br>1815 South Meyers Road, Suite 300<br>Oakbrook Terrace, IL 60181 | L&S Real Estate, L.L.C.<br>621 Pennsylvania Avenue, SE<br>Washington, DC 20003 | |

| G. Property Location | H. Settlement Agent |
|---|---|
| 515 2nd Street, NE<br>Washinton, DC 20002<br>Lot 35 in Square 754 | Monarch Title at Eastern Market |

| | Place of Settlement<br>210 7th Street, SE, Suite 100<br>Washington, DC 20003 | I. Settlement Date<br>05/26/06 |
|---|---|---|

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 1,800,000.00 | 401. Contract sales price | 1,800,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 27,573.50 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. City/town taxes                to | | 406. City/town taxes                to | |
| 107. County taxes                to | | 407. County taxes                to | |
| 108. Assessments                to | | 408. Assessments                to | |
| 109. Capitol Hill BID Tax 5/26 - 9/30 | 274.89 | 409. Capitol Hill BID Tax 5/26 - 9/30 | 274.89 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 1,827,848.39 | **420. GROSS AMOUNT DUE TO SELLER** | 1,800,274.89 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 50,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 105,407.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 802,120.58 |
| | | WashingtonFirst Bank | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210. City/town taxes       04/01  to 05/26 | 1,290.75 | 510. City/town taxes       04/01  to 05/26 | 1,290.75 |
| 211. County taxes                to | | 511. County taxes                to | |
| 212. Assessments                to | | 512. Assessments                to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 51,290.75 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 908,818.33 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 1,827,848.39 | 601. Gross amount due to seller (line 420) | 1,800,274.89 |
| 302. Less amounts paid by/for borrower (line 220) | 51,290.75 | 602. Less reduction amount due to seller (line 520) | 908,818.33 |
| 303. CASH      FROM      BORROWER | 1,776,557.64 | 603. CASH      TO      SELLER | 891,456.56 |

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT                    SETTLEMENT STATEMENT                    PAGE 2

| L. SETTLEMENT CHARGES: | File Number: 06-206 | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. | TOTAL SALES/BROKER'S COMMISSION based on price $  1,800,000.00 @   5.00 =   90,000.00 | | | |
| | Division of commission (line 700) as follows: | | | |
| 701. | $   84,825.00  to   Coldwell Banker Pardoe | (90,000.00 Less 5,175.00) | | |
| 702. | $   to | | | |
| 703. | Commission paid at Settlement   Realtor Holds Deposit | | | 84,825.00 |
| 704. | Administrative Fee   Coldwell Banker Pardoe | | 229.00 | 229.00 |
| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN | P.O.C. | | |
| 801. | Loan Origination Fee   % | | | |
| 802. | Loan Discount   % | | | |
| 803. | Appraisal Fee   to | | | |
| 804. | Credit Report   to | | | |
| 805. | Lender's Inspection Fee   to | | | |
| 806. | Mtg. Ins. Application Fee   to | | | |
| 807. | Assumption Fee   to | | | |
| 808. | | | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| 812. | | | | |
| 813. | | | | |
| 814. | | | | |
| 815. | | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. | Interest  from   to   @$   /day | | | |
| 902. | Mortgage Insurance Premium   to | | | |
| 903. | Hazard Insurance Premium   yrs. to | | | |
| 904. | | | | |
| 905. | | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. | Hazard Insurance   mo. @$   / mo. | | | |
| 1002. | Mortgage Insurance   mo. @$   / mo. | | | |
| 1003. | City property taxes   mo. @$   / mo. | | | |
| 1004. | County property taxes   mo. @$   / mo. | | | |
| 1005. | Annual Assessments   mo. @$   / mo. | | | |
| 1006. | mo. @$   / mo. | | | |
| 1007. | mo. @$   / mo. | | | |
| 1008. | Aggregate Adjustment | | | |
| 1100. | TITLE CHARGES | | | |
| 1101. | Settlement or closing fee   to   Monarch Title at Eastern Market | | 300.00 | 300.00 |
| 1102. | Abstract or title search   to   First American Title Ins. Co. | | 368.00 | |
| 1103. | Title examination   to | | | |
| 1104. | Title insurance binder   to | | | |
| 1105. | Document preparation   to | | | |
| 1106. | Notary fees   to | | | |
| 1107. | Attorney's fees   to | | | |
| | (includes above item No:   ) | | | |
| 1108. | Title insurance   to   First American Title Ins. Co. | | 6,750.00 | |
| | (includes above item No:   S\   ) | | | |
| 1109. | Lender's coverage | | | |
| 1110. | Owner's coverage   1,800,000.00 — 6,750.00 | | | |
| 1111. | Tax Certificate   Monarch Title at Eastern Market | | 25.00 | |
| 1112. | Process Release   Monarch Title at Eastern Market | | | 75.00 |
| 1113. | | | | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. | Recording fees   Deed $   26.50   ; Mortgage $   ; Releases $   53.00 | | 26.50 | 53.00 |
| 1202. | City/county/stamps   Deed $  19,800.00   ; Mortgage $ | | | 19,800.00 |
| 1203. | State tax/stamps   Deed $   ; Mortgage $ | | | |
| 1204. | Recordation Tax   Deed $  19,800.00   ; Mortgage $ | | 19,800.00 | |
| 1205. | | | | |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. | Survey   to | | | |
| 1302. | Pest Inspection   to | | | |
| 1303. | Escrow/Final Water Reading   D.C. Water and Sewer Authority | | | 100.00 |
| 1304. | Courier/Fed Ex Fees   Monarch Title at Eastern Market | | 50.00 | 25.00 |
| 1305. | Recording Service   First American Title Ins. Co. | | 25.00 | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| 1400. | TOTAL SETTLEMENT CHARGES   (enter on lines 103 and 502, Sections J and K) | | 27,573.50 | 105,407.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

The Computing Technology Industry Association, Inc.          LSS Real Estate, LLC

# EXHIBIT C

2/27/2007

# L & S Real Estate LLC

Register: 10130 · Suntrust Checking
From 05/25/2006 through 06/02/2006
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|---|---|---|---|---|---|---|---|---|
| 05/25/2006 | 1551 | William H Price | 2000 · Accounts Payable | Cert Of Good Standing | 150.00 | X | | 1,283.44 |
| 05/26/2006 | | | 1200 · Accounts Receivable | Deposit Net Funds fr... | | X | 891,456.56 | 892,740.00 |
| 05/31/2006 | | | 62000 · Bank Charges | Service Charge | 15.00 | X | | 892,725.00 |
| 06/01/2006 | | Toni Van Pelt | 1200 · Accounts Receivable | July 2006 Rent | | X | 2,200.00 | 894,925.00 |
| 06/01/2006 | | Center For Inquiry, Inc | 1200 · Accounts Receivable | July 2006 Rent | | X | 9,003.00 | 903,928.00 |
| 06/01/2006 | 1552 | National Capitol Bank | 89000 · Other Expense | Loan# 1-580-0722 | 198,207.98 | X | | 705,720.02 |
| 06/01/2006 | 1553 | Dale E Lowery | 89000 · Other Expense | Deferred Salary Pay... | 80,000.00 | X | | 625,720.02 |
| 06/01/006 | 1554 | Dale E Lowery | 89000 · Other Expense | 66.67% of payout fro... | 171,111.71 | X | | 454,608.31 |
| 06/01/2006 | 1555 | Wachovia Bank, LOC | 89000 · Other Expense | 4386-5452-1010-742... | 149,578.60 | X | | 305,029.71 |
| 06/01/2006 | 1556 | Morgan Stanley Credit Corp. | 89000 · Other Expense | 9402-390-489051:Pa... | 159,272.79 | X | | 145,756.92 |
| 06/01/2006 | 1557 | I. Michael Snyder | 89000 · Other Expense | Deferred Salary Pay... | 22,416.47 | X | | 123,340.45 |
| 06/01/2006 | 1558 | I. Michael Snyder | 89000 · Other Expense | IMS 33.33% of Sale ... | 85,427.59 | X | | 37,912.86 |
| 06/01/2006 | 1559 | Suntrust (LOC) | 2000 · Accounts Payable | 000039912 | 20,149.45 | X | | 17,763.41 |
| 06/22/2006 | 1560 | DC WASA 611 | 2000 · Accounts Payable | Acct#01002609 | 7.72 | X | | 17,755.69 |
| 06/22/2006 | 1561 | Federal Express | 2000 · Accounts Payable | 2264-0155-5 | 25.55 | X | | 17,730.14 |
| 06/02/2006 | 1562 | Fry Plumbing, Heating & Air... | 2000 · Accounts Payable | Inv# I9791 | 1,100.00 | X | | 16,630.14 |
| 06/02/2006 | 1563 | National Capital Bank-611/0... | 2000 · Accounts Payable | 1-401-0973 | 4,344.85 | X | | 12,285.29 |
| 06/02/2006 | 1564 | Pepco 515 2nd St | 2000 · Accounts Payable | Acct# 1601 4100 77 | 993.04 | X | | 11,292.25 |

L & S Real Estate LLC - QuickBooks Premier: Accountant Edition 2006    _ |□| x|

File  Edit  View  Lists  Accountant  Company  Customers  Vendors  Employees  Banking  Reports  Window  Help

**Make Deposits**    Ask a help question  Ask  ▼ How Do I?  _ |□| X|

Previous  Next  Print  ▾  |  Payments  Journal

Deposit To  trust Checking  ▼    Date  05/26/2006  🖩    Memo  Deposit Net Funds fro...

Click Payments to select customer payments that you have received. List any other amounts to deposit below.

| Received From | From Account | Memo | Chk No. | Pmt Meth. | Amount |
|---|---|---|---|---|---|
| CompTIA | 1200 · Accounts Rec... | Net Funds from sale ... | | Transfer | 891,456.56 |

Deposit Subtotal    891,456.56

To get cash back from this deposit, enter the amount below.  Indicate the account
where you want this money to go, such as your Petty Cash account.

Cash back goes to          Cash back memo              Cash back amount

Deposit Total    891,456.56

Save & Close    Save & New    Revert









Feb 27 07 07:56p    CASEtech, Inc.    202-543-3181    p.10

L & S Real Estate LLC - QuickBooks Premier: Accountant Edition 2004    _ |□| x|

File  Edit  View  Lists  Accountant  Company  Customers  Vendors  Employees  Banking  Reports  Window  Help

Write Checks - Suntrust Checking    Ask a help question  Ask  ▼ How Do I?  _ |□| x|

◄ Previous  ► Next  🖨 Print  ▾  🔍 Find  📋 Journal

Bank Account  [10130 · Suntrust Checking    ▼]    Ending Balance    8,340.78

No.  1556

Date  06/01/2006  📅

Pay to the Order of  Morgan Stanley Credit Corp.    ▼    $  159,272.79

One hundred fifty-nine thousand two hundred seventy-two and 79/100* * * * * * * * * * * *  Dollars

Address

Morgan Stanley Credit Corp.
PO Box, IL 60197-6435
USA
Carol Stream, IL.60197-6435

CLEARED

Memo    9402-390-489651:Pay off CASEtech's portion of this LOC fm Dale from the sale of 515 ...

Expenses  $159,272.79    Items    $0.00    ☐ To be printed

| Account | Amount | Memo | Customer:Job | |
|---|---|---|---|---|
| 89000 · Other Expense | 159,272.79 | Pay off CASEtech's portio... | | |

Clear Splits    Recalculate    Save & Close    Save & New    Revert





