IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SNYDER,                    :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :   Civil Action No. 06-2213 (JR)
                                   :
DALE LOWERY, et al.,               :
                                   :
        Defendants.                :
_____:

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Dale Lowery ("Lowery"), et al., by and through counsel, pursuant to Rule 56(c)of the Federal Rules of Civil Procedure, hereby move for Summary Judgment on the Complaint filed by Plaintiff Michael Snyder ("Snyder").

In support hereof, Defendants submit the accompanying Statement of Undisputed Material Facts and Memorandum of Points and Authorities.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.


_____/s/_____
Dale A. Cooter, #277454
James E. Tompert, #358952
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015
(202)537-0700
efiling@cootermangold.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SNYDER,                    :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :      Civil Action No. 06-2213 (JR)
                                   :
DALE LOWERY, <u>et al</u>.,        :
                                   :
        Defendants.                :
_____    :

### STATEMENT OF UNDISPUTED MATERIAL FACTS FILED IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1 of the Local Rules of Civil Procedure and in support of their Motion for Summary Judgment, Defendants, by and through undersigned counsel, hereby submit this Statement of Undisputed Material Facts and state as follows:

1. On November 5, 2005, Plaintiff Michael Snyder ("Snyder") and Defendant Dale Lowery ("Lowery") executed a document entitled Funding Allocation Agreement ("Funding Agreement").  Exhibit A; Lowery Declaration at ¶4 (Exhibit B).

2. In that agreement Snyder and Lowery agreed to the distribution of the proceeds from the sale of certain real property located at 515 Second Street, N.E. in Washington, D.C. ("the Second Street Property") owned by Defendant L&S Real Estate, LLC ("L&S"). Exhibit A; Exhibit B at ¶5. In consideration for his execution of the Funding Agreement,

Snyder received a reduction of debt in the entities in which he had an ownership interest and received a 33.3% distribution of the net proceeds from the sale.  Exhibit B at ¶5.

3. L&S is a limited liability company organized and operated in the District of Columbia.  Exhibit B at ¶6.

4. Snyder had a 1/3 ownership interest in L&S and Lowery had the remaining 2/3 ownership interest.  Exhibit B at ¶7.

5. In addition to L&S, Lowery and Snyder were also shareholders in Defendant CASEtech, Inc. ("CASEtech"), a Delaware corporation with its principal place of business in the District of Columbia at 621 Pennsylvania Ave., SE, Washington, D.C. 20003.  Exhibit B at ¶2.

6. Snyder owned 20% of the stock in CASEtech and Lowery owned the remaining 80% of the stock.  Exhibit B at ¶3.

7. At the time the Funding Agreement was executed, the sale of the Second Street property was contemplated, significant proceeds from the sale were expected, and CASEtech had run up significant business debts.  Exhibit B at ¶8.  On September 20, 2002, prior to the execution of the Funding Agreement, Snyder signed the $200,000 Line of Credit Promissory Note from CASEtech to the National Capital Bank of Washington, along with a Loan Analysis Acknowledgment, Borrower Statement, and Resolution. Exhibit G.

2

8. As set forth in the Funding Agreement, Snyder agreed to the distribution of the proceeds from the sale of the Second Street property in the following manner:

> FIRST.   To pay the costs of the sale.

> SECOND.  To pay the existing mortgages on the Second Street  property.

> THIRD.  "[T]o contribute to the capital of" CASEtech (in proportions equal to the ownership interests in L&S, i.e., 66.7% for Lowery and 33.3% to Snyder) "the amount necessary to pay off all short and long term debt of the Corporation," which "consists primarily of (A) the major part of a $200,000.00 line of credit owed to the National Capital Bank; and (B) monies used for operating capital and secured by 816 North Carolina Avenue, a private residence owned by Dale E. Lowery."

> FOURTH.  Any remaining funds "after satisfaction of the above obligations shall be distributed" in accordance with ownership interests in L&S, i.e., 66.7% to Lowery and 33.3% to Snyder.

Exhibit A.

9.  On May 26, 2006, the Second Street property sold for $1,800,000.  Exhibit B at ¶10; Exhibit C.

10. Prior to the execution of the Funding Agreement, Snyder had full and complete access to the books and records of both L&S and CASEtech, and took the books and records home to review them. Exhibit B at ¶9.

11. The proceeds from that sale were distributed in accordance with the terms of the Funding Agreement.  Exhibits C and D.  First, the costs of the sale were paid.  Exhibit C. Second, the existing mortgage was paid.  <u>Id.</u>  Third, the short

and long term debt of CASEtech was paid.  Exhibit D.  Fourth,
the remaining funds were distributed 66.7% to Lowery and 33.3%
to Snyder.  Id.; Exhibit A; Exhibit B at ¶¶ 3-4.

12.  Snyder received the sum total of $107,844.06
($22,416.47 for deferred salary and $85,427.59 for his 33.33%
share).  Exhibit B at ¶13.

                              Respectfully  submitted,

                              COOTER, MANGOLD, TOMPERT
                              & KARAS, L.L.P.


                              _____/s/_____

                              Dale A. Cooter, #277454
                              James E. Tompert, #358952
                              5301 Wisconsin Avenue, N.W.
                              Suite 500
                              Washington, D.C. 20015
                              (202)537-0700
                              efiling@cootermangold.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SNYDER,                    :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :    Civil Action No. 06-2213 (JR)
                                   :
DALE LOWERY, <u>et</u> <u>al</u>.,            :
                                   :
        Defendants.                :
_____:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Dale Lowery ("Lowery"), <u>et</u> <u>al</u>., by and through counsel, hereby submit this Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment and state as follows:

**FACTUAL BACKGROUND**

On November 5, 2005, Plaintiff Michael Snyder ("Snyder") and Defendant Lowery executed a document entitled Funding Allocation Agreement ("Funding Agreement"). Exhibit A. In that agreement Snyder and Lowery agreed to the distribution of the proceeds from the sale of certain real property located at 515 Second Street, N.E. in Washington, D.C. ("the Second Street Property") owned by Defendant L&S Real Estate, LLC ("L&S"). <u>Id.</u> L&S is a limited liability company organized and operated in the District of Columbia. Declaration of Dale Lowery, attached as Exhibit B at ¶6.

Snyder had a 1/3 ownership interest in L&S and Lowery had the remaining 2/3 ownership interest.  Id. at ¶7.  In addition to L&S, Lowery and Snyder were also shareholders in Defendant CASEtech, Inc. ("CASEtech"), a Delaware corporation with its principal place of business in the District of Columbia.  Id. at ¶¶ 2 and 3. Snyder owned 20% of the stock in CASEtech and Lowery owned the remaining 80% of the stock. Id. at ¶3.

At the time the Funding Agreement was executed, the sale of the Second Street property was contemplated, significant proceeds from the sale were expected and CASEtech had run up significant business debts. Id. at ¶8. As Snyder alleged in his Complaint, he knew that the Second Street property was for sale and agreed to the sale of the property.  Complaint at ¶¶ 22 and 23.  He even acknowledged in the Funding Agreement that it was in his best interest, the best interest of CASEtech and the best interest of L&S that "the proceeds be used to reduce the overall levels of indebtedness [of CASEtech] in accordance with the terms hereof." Exhibit A.  As set forth in the Funding Agreement, Snyder agreed to the distribution of the proceeds from the sale of the Second Street property in the following manner:

FIRST.   To pay the costs of the sale.

2

SECOND.  To pay the existing mortgages on the Second Street property.

THIRD.  "[T]o contribute to the capital of" CASEtech (in proportions equal to the ownership interests in L&S, i.e., 66.7% for Lowery and 33.3% to Snyder) "the amount necessary to pay off all short and long term debt of the Corporation," which "consists primarily of (A) the major part of a $200,000.00 line of credit owed to the National Capital Bank; and (B) monies used for operating capital and secured by 816 North Carolina Avenue, a private residence owned by Dale E. Lowery."

FOURTH.  Any remaining funds "after satisfaction of the above obligations shall be distributed" in accordance with ownership interests in L&S, i.e., 66.7% to Lowery and 33.3% to Snyder.

Id.

On May 26, 2006, the Second Street property sold for $1,800,000.  Exhibit C.  The proceeds from that sale were distributed in accordance with the terms of the Funding Agreement.  Exhibits C and D.  First, the costs of the sale were paid.  Exhibit C.  Second, the existing mortgage was paid.  Id. (The mortgage loan to Washington First Bank in the amount of $802,120.58 was paid off).  Third, the short and long term debt of CASEtech was paid.  Exhibit D.  Fourth, the remaining funds were distributed 66.7% to Lowery and 33.3% to Snyder.  Id.  Snyder received the sum total of $107,844.06 ($22,416.47 for deferred salary and $85,427.59 for his 33.33% share).  Exhibit B at ¶13.

Even though Snyder agreed to the distribution of the

3

proceeds from the sale as set forth above and received $107,844.06 in proceeds therefrom, after the distribution was made, he objected to the sale and asserted that the outstanding debt should have been paid last after a one-third/two-third split of the proceeds. Id. at ¶14. Thereafter, Snyder filed his Complaint herein.

In the Complaint, Snyder alleges eleven different causes of action, which are based on Snyder's assertion that the proceeds from the sale of the Second Street property should have been disbursed in a manner other than what is set forth in the Funding Agreement.  As explained below, and because Snyder and Lowery properly executed the Funding Agreement and the requisite disbursements were made, the allegations in the Complaint do not raise a genuine issue as to any material fact and Defendants are therefore entitled to judgment as a matter of law.

## ARGUMENT

### I.   THE SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c). A fact is "material" if it
might affect the outcome of the action under the governing
law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).
The party seeking summary judgment bears the initial burden of
demonstrating an absence of a genuine issue of material fact.
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

Although the Court will give the non-movant the benefit
of justifiable inferences in that party's favor, the non-
movant must "'provide evidence that would permit a reasonable
[fact-finder] to find' in the non-moving party's favor."
<u>Feemster v. GSL Limited Partnership</u>, __ F.Supp.2d __, 2007 WL
106522, at *3 (D.D.C. 2007)(bracketed language in original)
(<u>quoting</u> <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242 (D.C.
Cir. 1987)). <u>See</u> <u>Galdamez v. Xerox Corp.</u>, 171 Fed. Appx. 353,
354 (D.C. Cir. 2006) (affirming grant of summary judgment
where plaintiff failed to make a showing on an essential
element of his claim and on which he would bear burden of
proof at trial). Summary judgment is appropriate where the
language of a written contract is not ambiguous because a
written contract speaks for itself and binds the parties
without the need for extrinsic evidence. <u>Paul v. Howard</u>
<u>University</u>, 754 A.2d 297, 302 n.5 (D.C. 2000). That the two
parties disagree over the proper interpretation of the terms

of a contract does not render the contract ambiguous.  <u>Holland</u> <u>v. Hannan</u>, 456 A.2d 807, 815 (D.C. 1983).

Here, summary judgment is appropriate because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint. As discussed below, the allegations in the Complaint do not raise a genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law.

**II.  PLAINTIFF IS UNABLE TO SATISFY HIS BURDEN OF PROOF ON ANY CLAIM AND THEREFORE THIS COURT SHOULD GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The allegations raised by Snyder in the Complaint fail because Defendants complied with the terms of the Funding Agreement.  Further, Snyder is unable to satisfy his burden of proof on any claim set forth in the Complaint.  Because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, this Court should grant Defendants' motion for summary judgment.

**A. <u>Count I For Injunctive Relief Should Be Dismissed</u>**

Plaintiff has not alleged the elements of injunctive relief and has not made any allegations that those elements have been satisfied. <u>See</u> Complaint at ¶40; <u>see</u> <u>also</u>  <u>Atlantic</u> <u>Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.</u>, 295 F.Supp.2d 75, 81 (D.D.C. 2003) (the elements are whether "(1)

6

there is a substantial likelihood plaintiff will succeed on
the merits; (2) plaintiff will be irreparably injured if an
injunction is not granted; (3) an injunction will
substantially injure the other party; and (4) the public
interest will be furthered by an injunction.") (citing
Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 360 (D.C.
Cir. 1999); Serono Lab v. Shalala, 158 F.3d 1313, 1317-18
(D.C. Cir. 1998)).

The injunctive relief sought by Plaintiffs is barred
because Defendants complied with the terms of the Funding
Agreement, as further explained below.  Moreover, all of these
requests are barred for the simple reason that even if
Snyder's assertions are correct, then he would have a remedy
at law for damages, and is not entitled to injunctive relief.
Black River Valley Broadcasts v. McNinch, 101 F.2d 235, 238
(D.C. Cir. 1938) (proceeding in equity for injunction cannot
be maintained where complaining party has remedy at law).

Furthermore, in his request for injunctive relief Snyder
does not seek to preserve the status quo, but rather seeks to
have this Court order fundamental changes in the business
operations of CASEtech and L&S, yet the Complaint is devoid of
allegations to support such relief.  See Bancoult v. McNamara,
227 F.Supp.2d 144, 151 (D.D.C. 2002) (party who seeks

7

injunction "to change (rather than preserve) the status quo must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from denial of the injunction") (quoting Veitch v. Danzig, 135 F.Supp.2d 32, 35 (D.D.C. 2001)).  For example, Snyder seeks to "enjoin any actions of Lowery as majority stockholder, President and CEO of CASEtech and as majority shareholder and Managing Member of L&S, LLC."  Complaint at ¶41.

Snyder seeks "to order via mandatory injunction the disgorge from and transfer to Snyder his full 33.33% share of the L&S profits from the sale of the" Second Street property. Id.  He also seeks to enjoin "the selling, liquidation and/or disposing of assets of CASEtech and/or L&S pending final resolution of this case." Id.  This type of extreme relief, which would be profoundly different from the status quo is strongly discouraged.  Even if such relief were reasonable, the allegations in the Complaint do not support such broad and comprehensive relief.  Bancoult, 227 F.Supp.2d at 151. Further, because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.

### B. Count II For Breach Of Fiduciary Duty Should Be Dismissed

In order to establish that Lowery breached a fiduciary duty, Snyder first must assert that a duty was owed and that Lowery subsequently breached that duty. Lowery, "as a fellow director, shareholder and officer" of CASEtech and L&S, does not owe a fiduciary duty directly to Snyder. To the extent that he has a fiduciary duty, he has a duty to CASEtech and L&S, and not to Snyder. See McKay v. Washington, 226 F.2d 35, 44 (1955) (directors and officers of a corporation have a fiduciary duty to the corporation). Even if a duty existed, Plaintiff's claim would fail because Defendants complied with the terms of the Funding Agreement. Further, because there are no derivative allegations in the Complaint, Count II is not well grounded in law. Cowin v. Bresler, 741 F.2d 410, 414 (D.C. Cir. 1984) ("Claims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers harm independently of that visited upon corporation and other shareholders").

Snyder also ignores the business judgment rule, which protects Lowery from management disputes such as the one that Snyder has tried to concoct. See Gabelli & Co. v. Ligget Group, Inc., 479 A.2d 276, 289 (Del. 1984) (declaration and

9

payment of a dividend is within the discretion of a company's board of directors under Delaware law in exercise of business judgment rule); Behradrezaee v. Dashtara, 910 A.2d 349, 361 (D.C. 2006) (noting that absent an abuse of discretion, the exercise of judgment by a corporate board of directors will be respected by the courts under the business judgment rule). Because Plaintiff could not satisfy his burden of proof at trial and there are no material facts in dispute, this Court should grant summary judgment in Defendants' favor.

###    C.    Count III For Breach Of Contract Should Be Dismissed

The Funding Agreement is a valid contract and there was no breach of the terms contained in the Agreement.  See Henke v. U.S. Dep't of Commerce, 83 F.3d 1445, 1450 (D.C. Cir.1996) (stating that "a contract has certain essential elements, to wit, competent parties, lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation.") (citing 1 WILLISTON, CONTRACTS § 1:1 (4th ed. 1990) (discussing "classic concept of contract").  All of these elements are met here: Lowery and Snyder are both competent parties, the Agreement dealt with lawful subject matter, legal consideration was present, and a mutuality of assent and obligation was clear to the parties.    The

10

Agreement is supported by consideration in its very terms.
Also, Snyder received actual consideration pursuant to the
terms of the Agreement.  Snyder received the distribution he
was entitled to ($22,416.67 for deferred salary and $85,427.59
for his 33.3% ownership interest in L&S). Exhibit B at ¶13;
see also Jacobson v. Jacobson, 277 A.2d 280, 282 (D.C. 1971)
("'[a] promise is a sufficient consideration for a return
promise.  This has been true for at least four centuries, ever
since bilateral contracts were recognized.'") (quoting 1 A.
CORBIN, CONTRACTS § 142, at 611 (1963)).  Further, as owner of
20% of the stock in CASEtech, Snyder also received
consideration from the elimination of CASEtech debt.  Id. at
¶5.

Defendant Lowery did not breach the Agreement and there
can be no breach of either the Stockholder's Agreement or the
Operating Agreement because Defendants have complied with the
terms of the Agreement.  Snyder has not identified any term of
either contract that Lowery has breached.  Bemberry v.
District of Columbia, 758 A.2d 518, 520 (2000) ("a breach of
contract is an unjustified failure to perform what is promised
in a contract"). Snyder freely agreed to the terms in the
Funding Agreement and, as set forth above, Defendants complied
with those terms: First, the costs of the sale were paid.

11

Second, the existing mortgage was paid.  Third, the short and
long term debt of CASEtech was paid.  Fourth, the remaining
funds were distributed 66.7% to Lowery and 33.3% to Snyder.
Therefore, there is no breach of contract.  Because of this,
and because there are no disputed facts which are material to
the relief sought in Plaintiff's Complaint, Defendants are
entitled to summary judgment.

### D. Count IV For Tortious Breach of Covenant of Good Faith and Fair Dealing Should Be Dismissed

Because Snyder cannot satisfy his burden of proof on his
breach of contract claim, he also cannot prove his claim for
breach of the covenant of good faith and fair dealing.  There
can be no breach of the covenant of good faith and fair
dealing in the abstract because there can only be a breach of
the covenant of good faith and fair dealing when there is a
breach of an express term or condition of a contract.  Parker
v. Columbia Bank, 91 Md.App. 346, 604 A.2d 521, 531 (1992);
Anderson v. Chevron Corp., 933 F.Supp. 52, 55 (D.D.C. 1996)
(citing Mahoney v. NationsBank of Virginia, N.A., 249 Va. 216,
455 S.E.2d 5, 8-9 (1995)), where the Virginia Supreme Court
ruled that a person cannot have violated the implied covenant
of good faith and fair dealing where that person acted in a
manner specifically provided for by the express terms of an

12

agreement).  Lowery did not breach an express term or condition of a contract and, therefore, Snyder cannot succeed on a claim for breach of the covenant of good faith and fair dealing.  Id.  Because of this, and because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.

### E.    Count V For Waste/Misappropriation Of Corporate Assets/Funds Should Be Dismissed

Plaintiff's claim for corporate waste/misappropriation, to the extent that such a claim even exists, must be a derivative claim, brought by and on behalf of the corporation that was damaged.  Cowin, 741 F.2d at 414.  Because Count V of the Complaint was not pled as a derivative claim, Plaintiff could not satisfy his burden of proof as to this claim either. Id.

Also, Snyder's allegations that purported actions of corporate waste and misappropriation were concealed from him is belied by the fact that Snyder had full and complete access to the books and records of both CASEtech and L&S, and prior to his execution of the Funding Agreement reviewed the books and records.  Exhibit B at ¶9.  Snyder freely executed the Agreement and was fully knowledgeable about its terms and

13

effects.  Because of this and because there are no material facts in dispute, this Court should grant summary judgment in Defendants' favor.

### F.  Count VII [sic] For Fraud Should Be Dismissed

In order to establish fraud, Plaintiff must show the essential elements of fraud: (1) a false representation; (2) in reference to a material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) action taken in reliance upon the representation.  Urban Investments Inc. v. Branham, 464 A.2d 93, 98 (D.C. 1983) (citing Blake Construction Co. v. C.J. Coakley Co., 431 A.2d 569, 577 (D.C. 1981); Remeikis v. Boss & Phelps, Inc., 419 A.2d 986, 988 (D.C. 1980); accord Howard v. Riggs National Bank, 432 A.2d 701, 706 (D.C. 1981)).  Plaintiff could not satisfy this burden and his allegation that Defendant Lowery committed fraud also fails because Snyder freely agreed to the terms and conditions of the Funding Agreement. Exhibit B at ¶4; see also Landa v. Astin, 193 F.2d 369, 371 (D.C. Cir. 1951) ("competent persons shall have utmost liberty of contracting and their agreements voluntarily and fairly made shall be held valid and enforced in the courts") (quoting Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 356-57 (1931)).

There is no clear and convincing evidence of fraud in

14

this case.  See Atraqchi v. GUMC Unified Billing Services, 788
A.2d 559, 563 (D.C. 2002) (citations omitted) (each element of
fraud must be proven by clear and convincing evidence); see
also Redmond v. Birkel, 933 F.Supp. 1, 3 (D.D.C. 1996) (fraud
is never presumed; if there is a lack of proof as to any one
element, the fraud claim must fail).  Further, there are no
genuine allegations that Snyder was coerced in any way to sign
the Agreement.  Allegations of this nature are false because
Snyder had a full and fair opportunity to review the terms of
the Agreement, make any investigation he thought was necessary
concerning the indebtedness of CASEtech and had a full and
fair opportunity to review the books and records of CASEtech.
Exhibit B at ¶9.

Moreover, the allegation in the Complaint that Lowery
represented to Snyder that he would not invest more monies in
CASEtech than was necessary to pay the $200,000 loan, is
patently false.  It is belied by the terms of the Funding
Agreement itself, which state CASEtech "has run up significant
business debts" and the proceeds from the sale of the Second
Street property would be used "to pay off all short and long
term debt of the Corporation," which "consists primarily of
(A) the major part of a $200,000.00 line of credit owed to the
National Capital Bank; and (B) monies used for operating

15

capital and secured by 816 North Carolina Avenue, a private residence owned by Dale E. Lowery." Exhibit A. Because of this, and because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.

### G. Count VII [sic] For Unjust Enrichment Should Be Dismissed

To prove unjust enrichment, Plaintiff must show: "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted and retained the benefit; and (3) it would be unjust for the defendant not to pay the plaintiff the value of the benefit." Rapaport v. United States Dept. of Treasury, Office of Thrift Supervision, 59 F.3d 212, 217 (D.C. Cir. 1995), cert. denied, 516 U.S. 1073 (1996). The Court in Rapaport further noted that "the fundamental characteristic of unjust enrichment is 'that the defendant has been unjustly enriched by receiving something ... that properly belongs to the plaintiff [, thereby] forcing restoration to the plaintiff.'" Id. Plaintiff's unjust enrichment claim against Defendants fails because there can be no unjust enrichment where Defendants have complied with the terms and conditions of the Funding Agreement. Landa, 193 F.2d at 371; Harding Glass, 353 U.S. at 356-57.

16

There also can be no unjust enrichment when the proceeds of the sale of the Second Street property were used to pay off the debt of CASEtech, in which Snyder was a 20% shareholder. Rapaport, 59 F.3d at 217 (where the only "benefit" to the defendant is that it retains monies required to be paid under a contract, there has been no "benefit" as required for an unjust enrichment claim). Because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.

### H. Count VIII For Trover And Conversion Should Be Dismissed

Plaintiff's allegations of trover and conversion can only succeed if he satisfies the elements of this claim: "The tort of conversion is defined as an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other full value of the chattel." Federal Fire Protection Corp. v. J.A. Jones/Tompkins Builders, Inc., 267 F.Supp.2d 87, 92 n.3 (D.D.C. 2003) citing Restatement (Second) of Torts § 222A (1965). Plaintiff could not satisfy this burden and there can be no trover or conversion where Defendants have complied with the terms and conditions of the Funding Agreement. Landa, 193

17

F.2d at 371; <u>Harding Glass</u>, 353 U.S. at 356-57. There also
can be no trover or conversion when the proceeds of the sale
of the Second Street property were used to pay off debt of
CASEtech, in which Snyder was a 20% shareholder. Moreover,
Defendants did not interfere with Plaintiff's rights.
Instead, both parties freely agreed to sell the Second Street
property, pay the CASEtech debt, and receive a distribution
pursuant to the terms of the Funding Agreement. Counsel's
attempt to create this claim and others, where no such basis
exists, demonstrates Plaintiff's "kitchen-sink" approach in
this litigation, hoping that any claim might survive scrutiny.
Because of this, and because there are no disputed facts which
are material to the relief sought in Plaintiff's Complaint,
Defendants are entitled to summary judgment.

### I.  Count IX For Declaratory Relief <u>Should Be Dismissed</u>

Snyder is not entitled to any declaratory relief when
Defendants have complied with the terms and conditions of the
Funding Agreement. <u>Landa</u>, 193 F.2d at 371; <u>Harding Glass</u>, 353
U.S. at 356-57. Declaratory relief is also not available when
there has been compliance with the business judgment rule and
when the proceeds of the sale of the Second Street property
were used to pay off debt of CASEtech, in which Snyder was a

18

20% shareholder.  As such, there is no basis for a declaratory judgment in this case.  Fitts v. Federal Nat. Mortg. Ass'n, 44 F.Supp.2d 317, 330 (D.D.C. 1999) ("A request for declaratory judgment constitutes a form of relief, not a cause of action").  Because of this, and because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.

### J.    Count X For An Accounting, Equitable Lien Or Constructive Trust Should Be Dismissed

Snyder is not entitled to an accounting, equitable lien or constructive trust because he cannot prove the requisite elements.  For example, to establish a constructive trust, Plaintiff must establish three elements: "(1) there must be a wrongful act; (2) specific property acquired by the wrongdoer must be traceable to the wrongful conduct; and (3) there must be a reason why the party holding the property should not, in good conscience, be allowed to keep the property." Alsco-Harvard Fraud Litigation, 523 F.Supp. 790, 806-7 (D.D.C. 1981).  Plaintiff cannot meet any of these elements because there has been no wrongful act; just the execution of a valid contract.  An equitable lien or constructive trust would be improper because, as Plaintiff is aware, the distribution of the proceeds from the sale of the Second Street property has

19

already been made, and Snyder willingly accepted his share of the proceeds pursuant to the validly executed Funding Agreement.  Because Snyder could not satisfy his burden of proof as to these claims, and because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.

### K.    Count XI For A Judicial Dissolution Of L&S, LLC Should Be Dismissed

There is no basis for a claim for judicial dissolution of L&S.  Just because Snyder now disagrees with the management of L&S, even though he consented to the terms of the Funding Agreement, does not require this Court to exercise the extreme remedy of dissolving L&S.  Moreover, there are no allegations in the Complaint that the requirements for judicial dissolution of a limited liability company set forth in Sections 29-1047 and 29-1048 of the D.C. Code have been satisfied.  Dissolution of a limited liability company will only be granted "if it is not reasonably practicable to carry on the business in conformity with the articles of organization or any operating agreement."  D.C. Code. § 29-1048 (2001).  Snyder is unable to show this requirement and his claim for judicial dissolution of L&S must fail. Moreover, because there are no disputed facts which are

20

material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.

### III.   **PLAINTIFF IS NOT ENTITLED TO ANY DAMAGES OR ATTORNEYS' FEES**

#### A. **Plaintiff Is Not Entitled To Any Monetary Damages**

Plaintiff is not entitled to any monetary relief because Defendants have complied with the terms of the validly executed Funding Agreement.  Snyder is aware that the distribution of the proceeds from the sale of the Second Street property has already been made and he willingly accepted his share of the proceeds pursuant to the validly executed Funding Agreement.  Snyder does not have a claim for monetary damages and because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.  Plaintiff is also not entitled to any damages because he has not identified any in his Initial Disclosures, as required in the Scheduling Order and by Rule 26(a)(1) of the Federal Rules of Civil Procedure. <u>See</u> Section IV, below.

#### B. **Plaintiff Is Not Entitled To Any Punitive Damages**

There is no basis whatsoever for Plaintiff's request for punitive damages.  <u>United Mine Workers of America, Int'l Union v. Moore</u>, 717 A.2d 332, 341 (D.C. 1998)(reversing punitive

damages award, the Court found that "[w]hile UMWA's behavior was discriminatory, the record before us lacks any showing, by clear and convincing evidence, of malicious, wanton, reckless or willful actions on the part of UMWA"); <u>Boynton v. Lopez</u>, 473 A.2d 375, 377-378 (D.C. 1984)("[t]he tortious act must be 'willful and outrageous conduct.' <u>Spar v. Obwoya</u>, 369 A.2d [173,] 180 [D.C. 1977](<u>quoting</u> <u>Harris v. Wagshal</u>, 343 A.2d 283, 288 (D.C. 1975), or it must result in gross fraud. <u>Spar v. Obwoya</u>, <u>supra</u>, 369 A.2d at 180"); <u>BWX Electronics, Inc. v. Control Data Corp.</u>, 929 F.2d 707, 712 (D.C. Cir. 1991)(observing that "several District of Columbia cases have held that proof of fraud alone, unaccompanied by aggravating circumstances, is not sufficient to justify punitive damages"). Snyder has not alleged any specific facts in accordance with the foregoing case law which entitle him to an award of punitive damages. Further, there is not a single fact alleged in the Complaint, even when taken in the light most favorable to Plaintiff, that would show clearly and convincingly "willful and outrageous conduct" by Lowery. Because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.

22

### C. **Plaintiff Is Not Entitled To Any Attorneys' Fees**

Snyder is not entitled to an award of attorneys' fees. See Answering Service, Inc. v. Egan, 728 F.2d 1500, 1503 (D.C. Cir. 1984) ("as a general rule, attorneys' fees and expenses incurred by party in the successful litigation of a claim are not recoverable as damages absent a contractual or statutory basis for liability"). As counsel for Snyder should know, Snyder is not entitled to an award of attorneys' fees absent an express contractual provision for attorneys' fees, and in this case, there is no such contractual term in the Funding Agreement or any other contract, which would allow for a recovery of attorneys' fees by Snyder. Id.; Exhibit A. Because of this, and because there are no disputed facts which are material to the relief sought in Plaintiff's Complaint, Defendants are entitled to summary judgment.

### IV.    **PLAINTIFF HAS FAILED TO COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)**

Plaintiff's Initial Disclosures fail to comply with the provisions set forth in Federal Rule of Civil Procedure 26(a)(1). Rule 26(a)(1) requires: "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment,

23

identifying the subjects of the information." Fed. R. Civ. P. 26(a)(1). Plaintiff's Initial Disclosures simply listed individuals without providing their addresses, telephone numbers, or the nature of their knowledge which would tend to support Plaintiff's claims as outlined in the Complaint. A copy of Plaintiff's Initial Disclosures is attached as Exhibit E. Despite Defendants' timely request that Plaintiff comply with the 26(a)(1) provisions, Plaintiff has failed to do so. See Exhibit F. Therefore, Plaintiff has failed to provide the requisite information to support his claims for damages and, consequently, Defendants are entitled to summary judgment.

## CONCLUSION

For all the foregoing reasons, Defendants Dale Lowery, et al., respectfully request that this Court grant their Motion for Summary Judgment.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.

_____/s/_____
Dale A. Cooter, #277454
James E. Tompert, #358952
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015
(202)537-0700
efiling@cootermangold.com

24

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 11th day of May 2007, a copy of the foregoing DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, STATEMENT OF UNDISPUTED MATERIAL FACTS, MEMORANDUM OF POINTS AND AUTHORITIES and EXHIBITS in support thereof, and proposed ORDER was filed electronically pursuant to the Electronic Case Filing procedures of the United States District Court for the District of Columbia and sent by electronic mail to:

> David Z. Kaufman, Esq.
> KAUFMAN LAW, P.C.
> 11350 Random Hills Road
> Suite 800
> Fairfax, VA 22030
> David@dzklaw.com


> _____/s/_____
> Dale A. Cooter

**EXHIBIT A**

THIS FUNDING ALLOCATION AGREEMENT is made as of this 4th day of November, 2005, and is by and between Dale E. Lowery and I. Michael Snyder, stockholders of CASEtech, Incorporated, a Delaware corporation having a principal business address of 621 Pennsylvania Avenue, S.E., Washington, D.C. (the "Corporation"); and also partners in L&S Real Estate, LLC, having the same principal business address ("L&S" or the "LLC").

WHEREAS, the L&S property known as 515 Second Street N.E. is for sale and significant proceeds are expected, and

WHEREAS, the Corporation has run up significant business debts, and

WHEREAS, much of the original capital for L&S was obtained from the Corporation,

WHEREAS, the parties hereto recognize that it is in the best interests of themselves, the Corporation, and the LLC that the proceeds be used to reduce overall levels of indebtedness in accordance with the terms hereof.

### WITNESSETH:

NOW, THEREFORE, Dale E. Lowery and I. Michael Snyder (the "Partners") agree to devote the proceeds from the sale of 515 Second Street N.E. to the following purposes:

FIRST, to pay the costs of the sale. These costs consist of taxes, recordation fees, brokers' fees, and other such fees as are a normal component of real estate transactions.

SECOND, to pay off existing mortgages on 515 Second Street, N.E.

THIRD, to contribute to the capital of the Corporation (in the proportions set forth in Article Fourth below) the amount necessary to pay off all short and long term debt of the Corporation. This debt consists primarily of (A) the major part of a $200,000.00 line of credit owed to the National Capital Bank; and (B) monies used for operating capital and secured by 816 North Carolina Avenue, S.E., a private residence owned by Dale E. Lowery.

FOURTH, any funds remaining after satisfaction of the above obligations shall be distributed to the Partners without encumbrance according to their relative ownership interests in L&S, i.e. 66.7% to Dale E. Lowery and 33.3% to I. Michael Snyder.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement under seal as of the date first hereinabove written.

Dale E. Lowery, Ph.D.                              I. Michael Snyder

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SNYDER,                          :
                                         :
        Plaintiff,                       :
                                         :
v.                                       :    Civil Action No. 06-2213 (JR)
                                         :
DALE LOWERY, et al.,                     :
                                         :
        Defendants.                      :
_____     :

DECLARATION OF DALE LOWERY IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Dale Lowery, declare and state under the laws of perjury
of the District of Columbia as follows:

1.  I am over the age of 18 and am competent to testify to
the matters contained herein, which are made from my personal
knowledge.

2.  I am a shareholder, director, and President of CASEtech,
Inc., a Delaware corporation with its principal place of business
in the District of Columbia at 621 Pennsylvania Ave., SE,
Washington, D.C. 20003.

3.  At the times relevant to this dispute, I owned 80
percent of the stock in CASEtech and Plaintiff Michael Snyder
("Snyder") owned the remaining 20 percent.

4.  On November 5, 2005, Snyder and I executed a document
entitled Funding Allocation Agreement ("Funding Agreement").  At
the time that Snyder executed the Agreement, he was under no
coercion to do so and signed the Agreement by his own volition.

5.  In that agreement Snyder and I agreed to the distribution of the proceeds from the sale of certain real property located at 515 Second Street, N.E. in Washington, D.C. ("the Second Street Property") owned by L&S Real Estate, LLC ("L&S").  In consideration for his execution of the Funding Agreement, Snyder received a reduction of debt in the entities in which he had an ownership interest and received a 33.3% distribution of the net proceeds from the sale.

6.  L&S is a limited liability company organized and operated in the District of Columbia.

7.  Snyder had a 1/3 ownership interest in L&S and I had the remaining 2/3 ownership interest.

8.  At the time the Funding Agreement was executed, the sale of the Second Street property was contemplated, significant proceeds from the sale were expected, and CASEtech had incurred significant business debts.

9.  Prior to the execution of the Funding Agreement, Snyder had full and complete access to the books and records of both L&S and CASEtech, and took the books and records home to review them.

10.  On May 26, 2006, the Second Street property sold for $1,800,000.

11.  The proceeds from that sale were distributed in accordance with the terms of the Funding Agreement.

12.  First, the costs of the sale were paid. Second, the

2

existing mortgage was paid.  Third, the short and long term debt

of CASEtech was paid.  Fourth, the remaining funds were

distributed 66.7% to me and 33.3% to Snyder.

13.   Snyder received the sum total of $107,844.06

($22,416.47 for deferred salary and $85,427.59 for his 33.33%

share).

14.   Even though Snyder agreed to the distribution of the

proceeds from the sale as set forth above and received

$107,844.06 in proceeds therefrom, after the distribution was

made, he objected to the sale and asserted that the outstanding

debt should have been paid last after a one-third/two-third split

of the proceeds.

15.   As evident in the Funding Agreement that Snyder freely

signed, as well as in the terms above, paying the outstanding

debt last after a one-third/two-third spilt of the proceeds was

not the agreed upon distribution.


I swear under the penalties of perjury of the District of

Columbia that the facts set forth above are true and correct and

made from my personal knowledge.

Executed under the penalties of perjury in the District of

Columbia, on the __11th__ day of May, 2007.

Dale Lowery

3

**EXHIBIT C**

eb 27 07 07:53p    CASEtech, Inc.    202-543-3181    p.2

# A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

| B. Type of Loan | | | | |
|---|---|---|---|---|
| 1.☐ FHA    2.☐ RHS    3.☐ Conv. Unins. | 6. File Number | | 7. Loan Number | 8. Mortgage Insurance Case Number |
| 4.☐ VA    5.☐ Conv. Ins. | 06-206 | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| The Computing Technology Industry Association, Inc. 1815 South Meyers Road, Suite 300 Oakbrook Terrace, IL 60181 | L&S Real Estate, L.L.C. 621 Pennsylvania Avenue, SE Washington, DC 20003 | |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 515 2nd Street, NE Washington, DC 20002 Lot 35 in Square 754 | Monarch Title at Eastern Market | |
| | Place of Settlement 210 7th Street, SE, Suite 100 Washington, DC 20003 | I. Settlement Date 05/26/06 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | 1,800,000.00 | 401. Contract sales price | 1,800,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 27,573.50 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes    to | | 406. City/town taxes    to | |
| 107. County taxes    to | | 407. County taxes    to | |
| 108. Assessments    to | | 408. Assessments    to | |
| 109. Capitol Hill BID Tax 5/26 - 9/30 | 274.89 | 409. Capitol Hill BID Tax 5/26 - 9/30 | 274.89 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 1,827,848.39 | 420. GROSS AMOUNT DUE TO SELLER | 1,800,274.89 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT TO SELLER | |
| 201. Deposit or earnest money | 50,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 105,407.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 802,120.58 |
| | | WashingtonFirst Bank | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes    04/01  to 05/26 | 1,290.75 | 510. City/town taxes    04/01  to 05/26 | 1,290.75 |
| 211. County taxes    to | | 511. County taxes    to | |
| 212. Assessments    to | | 512. Assessments    to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY / FOR BORROWER | 51,290.75 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 908,818.33 |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 1,827,848.39 | 601. Gross amount due to seller (line 420) | 1,800,274.89 |
| 302. Less amounts paid by/for borrower (line 220) | 51,290.75 | 602. Less reduction amount due to seller (line 520) | 908,818.33 |
| 303. CASH    FROM    BORROWER | 1,776,557.64 | 603. CASH    TO    SELLER | |

eb 27 07 07:53p    CASEtech, Inc.    202-543-3181    p.3

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT    SETTLEMENT STATEMENT    PAGE 2

| L. SETTLEMENT CHARGES: | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ 1,800,000.00 @ 5.00 = 90,000.00 | File Number: 06-206 | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ 84,825.00 to Coldwell Banker Pardoe | | | |
| 702. $ to | (90,000.00 Less 5,175.00) | | |
| 703. Commission paid at Settlement    Realtor Holds Deposit | | | |
| 704. Administrative Fee    Coldwell Banker Pardoe | | | 84,825.00 |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | 229.00 | 229.00 |
| 801. Loan Origination Fee    % | P.O.C. | | |
| 802. Loan Discount    % | | | |
| 803. Appraisal Fee    to | | | |
| 804. Credit Report    to | | | |
| 805. Lender's Inspection Fee    to | | | |
| 806. Mtg. Ins. Application Fee    to | | | |
| 807. Assumption Fee    to | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest from    to    @$    /day | | | |
| 902. Mortgage Insurance Premium    to | | | |
| 903. Hazard Insurance Premium    yrs. to | | | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. Hazard Insurance    mo. @$    / mo. | | | |
| 1002. Mortgage Insurance    mo. @$    / mo. | | | |
| 1003. City property taxes    mo. @$    / mo. | | | |
| 1004. County property taxes    mo. @$    / mo. | | | |
| 1005. Annual Assessments    mo. @$    / mo. | | | |
| 1006.    mo. @$    / mo. | | | |
| 1007.    mo. @$    / mo. | | | |
| 1008. Aggregate Adjustment | | | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee    to Monarch Title at Eastern Market | | 300.00 | 300.00 |
| 1102. Abstract or title search    to First American Title Ins. Co. | | 368.00 | |
| 1103. Title examination    to | | | |
| 1104. Title insurance binder    to | | | |
| 1105. Document preparation    to | | | |
| 1106. Notary fees    to | | | |
| 1107. Attorney's fees    to | | | |
| (includes above item No: | | | |
| 1108. Title insurance    to First American Title Ins. Co. | | 6,750.00 | |
| (includes above item No:    S\ | ) | | |
| 1109. Lender's coverage | | | |
| 1110. Owner's coverage    1,800,000.00 — 6,750.00 | | | |
| 1111. Tax Certificate    Monarch Title at Eastern Market | | | |
| 1112. Process Release    Monarch Title at Eastern Market | | 25.00 | |
| 1113. | | | 75.00 |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording fees    Deed $ 26.50    ; Mortgage $    ; Releases $ 53.00 | | 26.50 | 53.00 |
| 1202. City/county/stamps    Deed $ 19,800.00    ; Mortgage $ | | | 19,800.00 |
| 1203. State tax/stamps    Deed $    ; Mortgage $ | | | |
| 1204. Recordation Tax    Deed $ 19,800.00    ; Mortgage $ | | 19,800.00 | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey    to | | | |
| 1302. Pest Inspection    to | | | |
| 1303. Escrow/Final Water Reading    D.C. Water and Sewer Authority | | | 100.00 |
| 1304. Courier/Fed Ex Fees    Monarch Title at Eastern Market | | 50.00 | 25.00 |
| 1305. Recording Service    First American Title Ins. Co. | | 25.00 | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400. TOTAL SETTLEMENT CHARGES    (enter on lines 103 and 502, Sections J and K) | | 27,573.50 | 105,407.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

**EXHIBIT D**

## L & S Real Estate LLC

2/27/2007

Register: 10130 · Suntrust Checking
From 05/25/2006 through 06/02/2006
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|---|---|---|---|---|---|---|---|---|
| 05/25/2006 | 1551 | William H Price | 2000 · Accounts Payable | Cert Of Good Standing | 150.00 | X | | 1,283.44 |
| 05/26/2006 | | | 1200 · Accounts Receivable | Deposit Net Funds fr... | | X | 891,456.56 | 892,740.00 |
| 05/31/2006 | | | 62000 · Bank Charges | Service Charge | 15.00 | X | | 892,725.00 |
| 06/01/2006 | | Toni Van Pelt | 1200 · Accounts Receivable | July 2006 Rent | | X | 2,200.00 | 894,925.00 |
| 06/01/2006 | | Center For Inquiry, Inc | 1200 · Accounts Receivable | July 2006 Rent | | X | 9,003.00 | 903,928.00 |
| 06/01/2006 | 1552 | National Capitol Bank | 89000 · Other Expense | Loan# 1-580-0722 | 198,207.98 | X | | 705,720.02 |
| 06/01/2006 | 1553 | Dale F.Lowery | 89000 · Other Expense | Deferred Salary Pay... | 80,000.00 | X | | 625,720.02 |
| 06/01/2006 | 1554 | Dale E Lowery | 89000 · Other Expense | 66.67% of payout fro... | 171,111.71 | X | | 454,608.31 |
| 06/01/2006 | 1555 | Wachovia Bank, LOC | 89000 · Other Expense | 4386-5452-1010-742... | 149,578.60 | X | | 305,029.71 |
| 06/01/2006 | 1556 | Morgan Stanley Credit Corp. | 89000 · Other Expense | 9402-390-489651-Pa... | 159,272.79 | X | | 145,756.92 |
| 06/01/2006 | 1557 | I. Michael Snyder | 89000 · Other Expense | Deferred Salary Pay... | 22,416.47 | X | | 123,340.45 |
| 06/01/2006 | 1558 | I. Michael Snyder | 89000 · Other Expense | IMS 33.33% of Sale ... | 85,427.59 | X | | 37,912.86 |
| 06/02/2006 | 1559 | Suntrust (LOC) | 2000 · Accounts Payable | 0000397912 | 20,149.45 | X | | 17,763.41 |
| 06/02/2006 | 1560 | DC WASA 611 | 2000 · Accounts Payable | Acct#0100260-9 | 7.72 | X | | 17,755.69 |
| 06/02/2006 | 1561 | Federal Express | 2000 · Accounts Payable | 2264-0155-5 | 25.55 | X | | 17,730.14 |
| 06/02/2006 | 1562 | Fry Plumbing, Heating & Air... | 2000 · Accounts Payable | Inv# 19791 | 1,100.00 | X | | 16,630.14 |
| 06/02/2006 | 1563 | National Capital Bank-611/O... | 2000 · Accounts Payable | 1-401-0973 | 4,344.85 | X | | 12,285.29 |
| 06/02/2006 | 1564 | Pepco 515 2nd St | 2000 · Accounts Payable | Acct# 1601 4100 77 | 993.04 | X | | 11,292.25 |

P.4    202-543-3181    Feb 27 07 07:54p    CASEtech, Inc.

eb 27 07 07:54p        CASEtech, Inc.              202-543-3181                p.5

L & S Real Estate LLC - QuickBooks Premier: Accountant Edition 2006    _ |O| x|

File  Edit  View  Lists  Accountant  Company  Customers  Vendors  Employees  Banking  Reports  Window  Help

**Make Deposits**    Ask a help question  Ask  ▼ How Do I?  _ |O| x|

Previous   Next   Print  ▼  Payments   Journal

Deposit To  Trust Checking  ▼   Date  05/26/2006   Memo  Deposit Net Funds fro...

Click Payments to select customer payments that you have received. List any other amounts to deposit below.

| Received From | From Account | Memo | Chk No. | Pmt Meth. | Amount |
|---|---|---|---|---|---|
| CompTIA | 1200 · Accounts Rec... | Net Funds from sale ... | | Transfer | 891,456.56 |

Deposit Subtotal    891,456.56

To get cash back from this deposit, enter the amount below.  Indicate the account
where you want this money to go, such as your Petty Cash account.

Cash back goes to         Cash back memo              Cash back amount

Deposit Total    891,456.56

Save & Close    Save & New    Revert



eb 27 07 07:55p      CASEtech, Inc.            202-543-3181            p.7





Feb 27 07 07:56p        CASEtech, Inc.            202-543-3181              p.9



L & S Real Estate LLC - QuickBooks Premier: Accountant Edition 2004    _ |□| x|

File | Edit  View  Lists  Accountant  Company  Customers  Vendors  Employees  Banking  Reports  Window  Help

Write Checks - Suntrust Checking    Ask a help question [Ask] ▼ How Do I?  _ |□| x|

Previous  Next  Print ▼  Find  Journal

Bank Account [10130 · Suntrust Checking ▼]    Ending Balance    8,340.78

No. 1556

Date 06/01/2006

Pay to the Order of  Morgan Stanley Credit Corp.    ▼    $ 159,272.79

One hundred fifty-nine thousand two hundred seventy-two and 79/100* * * * * * * * * * * * Dollars

Address
Morgan Stanley Credit Corp.
PO Box, IL 60197-6435
USA
Carol Stream, IL.60197-6435

CLEARED

Memo    9402-390-489651:Pay off CASEtech's portion of this LOC fm Dale from the sale of 515 ...

| Expenses | $159,272.79 | Items | $0.00 | | | To be printed |
|---|---|---|---|---|---|---|

| Account | Amount | Memo | Customer:Job | |
|---|---|---|---|---|
| 69000 · Other Expense | 159,272.79 | Pay off CASEtech's portio... | | |

Clear Splits    Recalculate    Save & Close    Save & New    Revert





eb 27 07 07:57p      CASEtech, Inc.          202-543-3181        P.13



**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Snyder, Michael | * | |
| Plaintiff | * | |
| v. | * | Case No.: 1:06cv02213 JR |
| Dale Lowery  et al. | * | |
| Defendants | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## PLAINTIFF'S INITIAL DISCLOSURES UNDER
## F.R.C.P. 26(a)(1)

COMES NOW the Plaintiff, Michael Snyder, and provides this, the initial disclosures required by Fed. R. Civ. P. 26(a) and states:

1.      The documents required to be produced under Fed. R. Civ. P. 26(a)(1)(b) through (d) are contained on the CD attached to this pleading in either *.pdf or *.doc or *.xls format.  These are standard formats used by Adobe Acrobat, MicroSoft Word, and MicroSoft Excel respectively.

2.      The names of individuals and, where known, contact information required to be disclosed under Fed. R. Civ. P. 26(a)(1)(a) are:

a.      Christine Kirby;

b.      Eric Cohen;

c.      Kathleen Edwards;

ENTERED APR 1 7 2007

d.      Steve Lowery;

e.      Mike Licht

f.      Paul Buerkholtz;

g.      Elizabeth Jenkins;

h.      Ryan See;

i.      David Wendelken;

j.      Donna Hanousek;

k.      Tom Strobell;

l.      Hossein Noshirvani;

m.      Oron Strauss;

n.      Hetal Patel;

o.      Andy Greenfield;

p.      James Biggs;

q.      Stan Zdun;

r.      Christine (Tina) Baily;

s.      Chick Becker;

t.      Daniel Gilliland;

u.      George Didden;

v.      George Conners;

w.      Kitty Kaup;

x.      Brian Alpert, Esq.

Respectfully submitted,

Michael Snyder,
By Counsel

KAUFMAN LAW, A Professional Corporation
11350 Random Hills Rd.  Suite 800
Fairfax, VA 22030
703.764.9080
703.764-0014 (fax)
David@businessbrawls.com
Counsel for Plaintiff

By:   **D.Z. Kaufman**  Digitally signed by D.Z. Kaufman
DN: CN = D.Z. Kaufman, C = US, O = Kaufman
Law, A Professional Corporation
Date: 2007.04.11 11:00:52 -04'00'

D.Z. Kaufman, Bar # 435123

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2007, a copy of the above document was served via ECF of the U.S. District Court of the District of Columbia on counsel for Defendants Dale A. Cooter, Esq.  and James E.  Tompert, Esq., 5301 Wisconsin Ave., NW, Suite 500, Washington, D.C.  20015 and another copy of the document as well as the accompanying CD was mailed, first class postage prepaid, to the same parties at the same address.

**D.Z. Kaufman**  Digitally signed by D.Z. Kaufman
DN: CN = D.Z. Kaufman, C = US, O =
Kaufman Law, A Professional Corporation
Date: 2007.04.11 11:00:40 -04'00'

David Zachary Kaufman

**EXHIBIT F**

ENTERED APR 2 6 2007

LAW OFFICES

## COOTER, MANGOLD, TOMPERT & KARAS, L.L.P.

5301 WISCONSIN AVENUE, N.W.
SUITE 500
WASHINGTON, D.C. 20015
TEL: (202) 537-0700
FAX: (202) 364-3664

JAMES E. TOMPERT
WRITER'S DIRECT DIAL
(202) 537-6980
jtompert@cootermangold.com

April 26, 2007

**VIA HAND DELIVERY**

David Z. Kaufman, Esq.
KAUFMAN LAW, P.C.
11350 Random Hills Road
Suite 800
Fairfax, VA 22030

Re: **Michael Snyder v. Dale Lowery et al**.
**No. 1:06CV02213**

Dear Mr. Kaufman:

Pursuant to your request, please find enclosed copies of the documents we have compiled as part of our initial disclosures in the above-referenced case.

Also, we have reviewed your Initial Disclosures and have determined that they do not comply with Rule 26(a)(1) of the Federal Rules of Civil Procedure. Please provide the disclosures which are required by Rule 26(a)(1) as soon as possible.

Sincerely,

James E. Tompert

Enclosures

CC: Dale A. Cooter, Esq.

**EXHIBIT G**



# THE NATIONAL CAPITAL BANK OF WASHINGTON
## 316 PENNSYLVANIA AVENUE, SE
## WASHINGTON, DC 20003
## 202-546-3568

### Variable Rate Revolving Line of Credit Promissory Note

$200,000.00                                      September 20, 2002

For value received, the undersigned promises to pay on or before September 20, 2003, to the order of The National Capital Bank of Washington ("Lender")at its headquarters office located at 316 Pennsylvania Avenue, SE, Washington, DC 20003, or at such other place as the holder hereof may from time to time designate, the unpaid amount of all sums that have been advanced to or for the benefit of the undersigned in accordance with the terms hereof and that certain Line of Credit Agreement ("Agreement"), between the undersigned and Lender, dated as of September 20th, 2002. Advances evidenced by this Note shall be made in accordance with the Agreement. Advances, which may be endorsed hereon, evidenced by this Note shall be made in accordance with the Loan Agreement, and at the oral or written request of Dale E. Lowery or I. Michael Snyder, each of whom is authorized to request advances and direct the disposition of such advances until written notice of the revocation of such authority is received by the Lender at the office set forth above. Any advance shall be conclusively presumed to have been made to or for the benefit of the undersigned when made in accordance with such requests, regardless of the fact that persons other than those authorized above may have authority to request sums to be advanced hereunder. No request for an advance will be honored if a default hereunder shall have occurred and exists, or if the amount requested, when added to the then total outstanding unpaid balance hereof, would exceed the sum of TWO HUNDRED THOUSAND *** &***Dollars ($200,000.00). Advances pursuant to the Agreement shall be made on a revolving basis and, subject to the provisions thereof, the undersigned may borrow, prepay, and re-borrow under the Agreement from time to time, and at any time prior to the due date of this Note.

The unpaid balance of this Note, at any time, shall be the total amount advanced, plus interest accrued thereon and costs, expenses, and fees chargeable hereunder, less the amount of payments made hereon by or for the undersigned, which balance may be endorsed hereon from time to time by the holder hereof.

Interest shall be charged on the unpaid principal balance of this Note to the date of maturity on a daily basis for the actual number of days any portion of the principal is outstanding, computed on the basis of a 365 day year, at "Wall Street Journal Prime Rate", presently Four Point Seven Five percent per annum, (4.75 %), plus One percent per annum, (1.00 %). Each change in the Wall Street Journal Prime Rate (or any component thereof) shall become effective, without notice to the undersigned (which notice is hereby expressly waived by the undersigned), on the last business day of each calendar quarter. Should the Wall Street Journal, during the term of this Note, abolish or abandon the practice of establishing a Prime Rate, then the Rate used during the remaining term of this Note shall be that interest rate then in effect at Lender, which, from time to time, in the reasonable judgment of Lender, most effectively approximates the original definition of the Prime

 

Rate. If a range of Prime Rates is published in the Wall Street Journal then the higher of the published rates shall apply. The undersigned acknowledges that Lender may, from time to time, extend credit to other persons at rates of interest varying from, and having no relationship to, the Wall Street Journal Prime Rate.

Interest shall be payable Monthly on the 10th day of each month commencing with the 10th day of October, 2002, until all the principal and interest and other charges hereunder shall have been fully paid.

The undersigned acknowledges that the undersigned has agreed to the rate of interest expressed above, plus; (1) any compensating balance requirement of Lender; and (2) any additional charges, costs, and fees arising out of or related to the transaction of which this Note is a part, to the extent deemed to be interest under applicable law.

Upon "default," all obligations under this Note (including principal, interest, costs, and fees) shall bear interest as aforesaid, until paid in full. In the event that any payment becomes overdue for a period in excess of fifteen (15) days, and Lender does not exercise its option to accelerate the maturity of this Note, a late charge of five percent (5%) of the overdue payment amount may be charged by Lender for the purpose of defraying the costs and expenses incident to such delinquency.

Each and every payment due under this Note shall be made in lawful money of the United States and in immediately available funds, and when made shall be first applied to accrued costs, expenses, and fees, if any, then to interest due, and then to the reduction of the principal amount of this Note.

At the option of the holder hereof, any of the following shall constitute a "default" hereunder, and, upon the occurrence of any of the following, all obligations hereunder shall, at the option of the holder hereof, become immediately due and payable, without presentment for payment, diligence, grace, exhibition of this Note, protest, further demand, or notice of any kind, all of which are hereby expressly waived: (1) any sum owing hereunder or under any other indebtedness of the undersigned to Lender is not paid as agreed; (2) any petition or application for a custodian, as defined by Title 11, United States Code, as amended from time to time (the Bankruptcy Code) or for any form of relief under any provision of the Bankruptcy Code or any other law pertaining to reorganization, insolvency, or readjustment of debts is filed by or against the undersigned, any partnership of which the undersigned is a partner, or any surety or guarantor of the indebtedness evidenced by this Note (hereinafter surety or guarantor hereof), their respective assets or affairs; (3) the undersigned (or any surety or guarantor hereof) makes an assignment for the benefit of creditors, is not paying debts as they become due, or is granted an order for relief under any chapter of the Bankruptcy Code; (4) a custodian, as defined by the Bankruptcy Code, takes charge of any property of the undersigned, any property of any partnership of which the undersigned is a partner (or any property of any surety or guarantor hereof); (5) garnishment, attachment, levy, or execution is issued against any of the property or effects of the undersigned, or any partnership of which the undersigned is a partner (or any surety or guarantor hereof); (6) the death, dissolution or termination of existence of the undersigned; (7) there is any default or breach of any representation, warranty, or covenant, or there is any false statement or material omission, by the undersigned under any document forming part of the transaction in respect of which this Note is made or forming part of any other transaction under which the undersigned is indebted to Lender; or (8) the Lender hereof in good faith deems itself insecure for any reason or believes that the prospect of payment by the undersigned (or any surety or guarantor hereof) is impaired.



No provision of this Note or any other aspect of the transaction of which this Note is a part is intended to or shall require or permit the Lender, directly or indirectly, to take, receive, contract for, or reserve, in money, goods, or things in action, or in any other way, any interest (including amounts deemed by law to be interest, such amounts to then be deemed to be an addition to the rate of interest agreed upon) in excess of the maximum rate of interest permitted by applicable law in The District of Columbia as of the date hereof. If any such excess shall nevertheless be provided for, or be adjudicated by a court of competent jurisdiction to be provided for, the undersigned shall not be obligated to pay such excess but, if paid, then such excess shall be applied against the unpaid principal balance of this Note or, to the extent that the principal balance of this Note or, to the extent that the principal balance has been paid in full by reason of such application or otherwise, such excess shall be remitted to the undersigned.

The undersigned hereby agrees (1) to any and all extensions (including extensions beyond the original term hereof) and renewals hereof, from time to time, without notice, and that no such extension or renewal shall constitute or be deemed a release of any obligation of the undersigned to the holder hereof; (2) that any written modification, extension, or renewal hereof executed by the undersigned shall constitute a representation and warranty of the undersigned that the unpaid balance of principal, interest, and other sums owing hereunder at the time of such modification, renewal, or extension are owed without adjustment for any offset, counterclaim, or other defense of any kind by the undersigned against Lender; (3) that the acceptance by the holder hereof of any performance that does not comply strictly with the terms hereof shall be deemed neither to be a waiver nor bar of any right of said holder, nor a release of any obligation of the undersigned to the holder hereof; (4) to offsets of any sums or property owed to the undersigned by the holder hereof at any time; (5) that the undersigned is and shall remain subject to the in personam, in rem, and subject matter jurisdiction of the courts of The District of Columbia (including the Federal District Court for the District of Columbia) for all purposes pertaining to this instrument and all documents and instruments executed in connection herewith, securing the same, or in any way pertaining hereto; (6) that no surety or guarantor hereof shall be required to be joined in any action brought to enforce this Note, and that the undersigned waives the right to require the joinder of the undersigned in any action to enforce the liability of a surety or guarantor hereof; (7) that this Note shall be governed by the laws of The District of Columbia, and the United States applicable to the holder hereof upon demand any and all costs, expenses, and fees (including reasonable attorney fees) incurred in enforcing or attempting to recover payment of the amounts due under this Note, including negotiating, documenting, and otherwise pursuing or consummating modifications, extensions, compositions, renewals, or other similar transactions pertaining to this Note, irrespective of the existence of an event of default, and including costs, expenses, and fees incurred before, after, or irrespective of whether suit is commenced, and in the event suit is brought to enforce payment hereof, such costs, expenses, and fees and all other issues in such suit shall be determined by a court sitting without a jury.

The undersigned authorizes Lender to furnish any information in its possession, however acquired, concerning the undersigned (or any affiliate) to any person or entity, for any purpose that Lender, in good faith and in its sole discretion, believes to be proper, including without limitation, the disclosure of information to any actual or prospective lender to the undersigned, any actual or prospective participant in a loan between the undersigned and Lender, any prospective purchaser of securities issued or to be issued by Lender, and, to the extent permitted by law, any governmental body or regulatory agency, or in connection with the actual or prospective transfer of all or a portion of this Note to another financial institution.

 

If more than one person signs this Note, then all words used herein in the singular shall be deemed to have been used in the plural as the context and construction so required, and when this Note is executed by more than one person, the word "undersigned" shall mean each and all of them, jointly and severally.

The undersigned represents and warrants that the indebtedness represented by this Note is for commercial, agricultural, or business purposes. Lender shall at all times have a lien against the deposit account(s) (except IRAs) maintained by any of the undersigned with Lender until said indebtedness is paid in full.


**Signature(s)**

**Borrower:**

**CASEtech, Inc.**

BY: _____
    Dale E. Lowery, President

_____
Dale E. Lowery, Personally

_____
I. Michael Snyder, Personally

_____
Phyllis E. English, Personally

611 Pa. Ave., SE Suite 300
Washington, DC 20003
202-543-4499X100 Cell 202-210-0099

52-1858291



# LOAN ANALYSIS ACKNOWLEDGMENT

I(We) the undersigned hereby, jointly and severally if more than one, specifically acknowledge that I(We) have applied for a loan from the National Capital Bank of Washington (Bank) in the amount of $ 200,000.00, or that I(We) have been requested by the Bank to Guarantee payment of a loan to The National Capital Bank of Washington .

I(We) hereby acknowledge that the Bank has performed an analysis of all financial information provide in conjunction with this loan and that the Bank has informed me(us) that there are not assets or cash flow necessary, in the Bank's opinion to support the granting of this loan, in my or our name only.

I(We) have willingly and without reservation agreed to become a joint applicant or guarantor of said loan, and in so doing realize that my (our) personal assets and income, as well as, any assets I(We) own jointly with another maker or guarantor of said loan may be subject to attachment, garnishment or judgment in satisfaction of the principal, interest and costs of collection of said note.

Signed X _____    Signed X _____
　　　　Dale E. Lowery　　　　　　　　　　　I. Michael Snyder

Signed X _____
　　　　Phyllis E. English

Date: September 20, 2002

 

# BORROWER STATEMENT

The undersigned borrower has entered into a loan transaction with The National Capital Bank of Washington as evidenced by a promissory note executed by borrower in the principal amount of $200,000.00  . Borrower hereby certifies that they have read this statement and, that the proceeds of the loan are not to be used either to purchase or to pay to a seller any part of the purchase price of goods used or bought for use primarily for personal, family or household purposes.  Borrower further certifies that the purpose of the loan is as follows:    Working Capital for Software Programming Firm CASEtech. Inc.

**DATED** this 20th day of September 2002.

**WITNESS:**

Dale E. Lowery, Personally

I Michael Snyder, Personally

Phyllis B. English

*Original in Vault*

# UNIVERSAL BORROWING RESOLUTION
(Use for sole proprietorships, corporations, all partnerships, limited liability companies and organizations)

**TO: The National Capital Bank of Washington ("Bank")**

This document is intended to be a universal business resolution authorizing the acquiring and execution of one or more business loans at the Bank. The undersigned desires to obtain a loan or loans at The National Capital Bank.

I HEREBY CERTIFY that I am a duly constituted: Owner, Officer, General Partner or Managing Member, (circle one) of the: sole proprietorship, corporation, organization, partnership or limited liability company (circle one) known as: __Corporation__ __CASEtech, Inc.__ ("Borrower"), legally constituted and operating in good standing, in the State of _____ District of Columbia, with principal offices located at __911 Pennsylvania Avenue SE Washington, DC 20002__ and the keeper of the records and seal of said Borrower; that the following is a true and correct copy of resolution(s) duly adopted at a legal meeting of the Borrower held in accordance with the Authorizing Agreement of said Borrower at its offices on the __20__ day of __September__, __2002__. I further certify that said Borrower is authorized to do business in the District of Columbia and that this resolution is now in full force and effect.

BE IT RESOLVED, that the persons whose signatures and titles appear on this resolution ("Signatories") of this Borrower, or his, her or their successors in office, or any (insert the number required to sign) __1__ of them be and they, he, she hereby are (is) authorized for, on behalf and in the name of this Borrower as follows:

1. Negotiate and procure loans from the Bank up to an amount not exceeding: **No limit unless specified hereafter** $ __Unlimited__

2. Discount with said Bank commercial or other business paper belonging to Borrower made or drawn upon by third parties, without limit.

3. Give security for any liabilities of Borrower to Bank by pledge, assignment or a lien upon any assets of Borrower.

4. Execute, in such form or forms required by Bank, all notes or other evidence of such loans, all instruments of pledge, assignment or lien and that none of the same shall be valid unless so signed or endorsed, provided however, that the endorsement of promissory notes discounted may be effected by any one of the signatories.

BE IT FURTHER RESOLVED, that said Bank be, and it hereby is, authorized and directed to pay the proceeds of any such loans or discounts as directed by the persons so authorized to sign whether payable to the individual credit of any person or not.

BE IT FURTHER RESOLVED, that the foregoing power and authority of each of the signatories appearing on said resolution shall continue in full force and effect until actual written notice of revocation is received by Bank from one of the signatories.

BE IT FURTHER RESOLVED, that by executing this resolution, Borrower agrees to all federal and state laws, rules and regulations and the policies, procedures of the Bank applicable to any transaction conducted hereunder. If Borrower is a Sole Proprietorship, Owner hereby constitutes signatories as complete and full attorney(s) in fact to accomplish each and every purpose of this resolution.

I HEREBY FURTHER CERTIFY that the signatures appearing below are the duly constituted signatories of the Borrower and that they continue as signatories at the present time, and that the signatures appearing thereon are the genuine, original signatures of each.

**(Please supply genuine signatures hereunder)**

Signature: _____ Printed Name: __Dale E. Lowery__ Title: __President__

Signature: _____ Printed Name: __I.Michael Snyder__ Title: __Personally__

Signature: _____ Printed Name: _____ Title: _____

IN WITNESS WHEREOF, I have hereunto affixed my name this __20th__ day of __September__, __2002__.

Signature: _____ Printed Name: __Dale E. Lowery__ Title: __President__    SEAL
**(Must be signed by Corporate Secretary, Organization Officer, Owner, General Partner, or Managing Member)**

I hereby certify that I am an authorized official of said Borrower and that the foregoing resolution is true and correct in each and every detail, and that Borrower is officially organized in the District of Columbia or the State of __Delaware__ (Signature must be a different official than the one signing above, but is not required for one-person corporation or sole proprietorship.)

Signature: _____ Printed Name: __Dale E. Lowery__ Title: __President__    SEAL

Rev. 5-2001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SNYDER,                  :
                                 :
        Plaintiff,               :
                                 :
v.                               :    Civil Action No. 06-2213 (JR)
                                 :
DALE LOWERY, et al.,             :
                                 :
        Defendants.              :
_____  :


**PROPOSED ORDER**

Upon consideration of Defendants' Dale Lowery, et al.

Motion for Summary Judgment, their supporting Memorandum of

Points and Authorities and Statement of Material Facts Not in

Dispute, and any opposition thereto by Plaintiff Michael

Snyder, and any hearing thereon, it is this _____ day

of _____, 2007, hereby

**ORDERED**, that Defendants' Motion for Summary Judgment be,

and it hereby is, **GRANTED,** and Plaintiff's Complaint is hereby

dismissed with prejudice.


                        _____
                        James Robertson
                        United States District Judge

Copies to:

Dale A. Cooter, Esq.
James E. Tompert, Esq.
Cooter, Mangold, Tompert & Karas, LLP
5301 Wisconsin Avenue, N.W., Suite 500
Washington, D.C. 20015

David Z. Kaufman, Esq.
KAUFMAN LAW, P.C.
11350 Random Hills Road, Suite 800
Fairfax, VA 22030