IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Michael Snyder | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Case No.: 1:06cv02213 JR |
| | * | |
| Dale Lowery, et al. | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

COMES NOW THE PLAINTIFF IN THIS CASE, Michael Snyder, by counsel, and Replies to Defendants' Opposition to Plaintiff's Cross-Motion for Summary Judgment.

**INTRODUCTION**

As Snyder explained in his original Memorandum of Law, Lowery took funds from L&S that rightfully belonged to Snyder, and used them—for his sole benefit—to reduce the debts of CASEtech. Lowery's defense to Snyder's claims (for breach of fiduciary duty; breach of the L&S Operating Agreement; breach of the covenant of good faith and fair dealing implied in that operating agreement; unjust enrichment; trover and conversion; equitable lien/constructive trust; and dissolution) rests entirely on his contention that his conduct was permitted by the terms of a valid and enforceable contract (Defendants' Exhibit A). However, because Exhibit A gives Snyder nothing he was not already entitled to, it lacks consideration and therefore is not an enforceable contract. Without the "protection" of Exhibit A, Lowery is liable for his conduct

-1-

under both common law and contractual theories.

Lowery has not disputed either (1) the legal proposition that, under District of Columbia law, a close corporation or limited liability company that is, for all practical intents and purposes, operated as a partnership, may be treated as partnership for the purposes of determining the stockholders' or members' fiduciary duties to each other or (2) the facts demonstrating that Lowery and Snyder operated L&S as a partnership. Since the failure to remit a partner's distributive share constitutes a breach of fiduciary duty, Snyder is entitled to summary judgment on his breach of fiduciary duty claim.

Furthermore, Lowery's bare contention that his conduct does not constitute a breach of either the fiduciary duties explicitly set forth in the L&S Operating Agreement or the covenant of good faith and fair dealing implied in that agreement is just that: a conclusory assertion unsupported by citation to a single case. Because Lowery's conduct constitutes "intentional misconduct" under applicable caselaw, Snyder is entitled to summary judgment on his contractual claims.

Finally, both parties agree that Snyder's remaining claims stand or fall based on whether Exhibit A is a valid contract. Since it is not, Snyder is entitled to summary judgment on those claim.

Thus, Snyder's Cross-Motion for Summary Judgment should be granted in its entirety.

## NO MATERIAL FACTS ARE IN DISPUTE

Lowery's list of disputed material facts lists only facts which are not disputed or conclusions of law which are not facts. Specifically:

- Lowery's "Disputed Material Facts" numbers 1-6 are not disputed: in fact, Snyder himself has alleged these facts in numerous documents submitted to this Court.[1] But Snyder does argue that the undisputed facts demonstrate that the two men should be treated as partners as a matter of both Delaware and Washington, D.C. law.

- In "Disputed Material Fact" number 7, Lowery claims, in a conclusory manner, that he treated Snyder fairly, honestly and openly. But number 7 is not a disputed fact, it is a disputed conclusion of law. And as such it is perhaps the fundamental issue in the lawsuit.

- As for "Disputed Material Fact" number 8, Snyder states, and has always stated, that Defendants' Exhibit A speaks for itself. Whether or not Exhibit A is a contract is a conclusion of law, not a fact. Furthermore, Snyder will not accede to Lowery's misquoting of Exhibit A—Snyder insists that Exhibit A be quoted correctly and without any additions or omissions. This is also true for "Disputed Material Fact" number 9. Exhibit A speaks for itself and Snyder does not and will not dispute accurate quotations from it.

- For purposes of this Cross-Motion for Summary Judgment, Snyder does not dispute Lowery's contention in "Disputed Material Fact" number 11, that Snyder

---

[1] For example, Lowery alleges in No. 1 that CASEtech is a Delaware corporation; Snyder alleged this fact both in the initial Verified Complaint (at ¶3) and in his Statement of Uncontested Facts.

      was not coerced, but this is not material to any of Snyder's remaining claims.

- As for "Disputed Material Fact" number 12, it is a conclusion of law to say that the reduction of debt in CASEtech and the distribution of proceeds constituted consideration under the facts and circumstance of this case. The issue of whether or not Snyder received any consideration at all is crucial to this case and to the legal question of whether Defendants' Exhibit A is a contract.

- Finally, Snyder does not dispute either Lowery's "Disputed Material Fact" 13 or 14.

Thus, there are no issues of disputed material facts and this case is ripe for summary judgment.

## ARGUMENT

**I.   Since the facts are not disputed, the Court can—and should—grant Snyder summary judgment as a matter of law[2]**

Since (as discussed above) all of the "facts" alleged in Lowery's Statement of Material Facts in Dispute are either (1) not in dispute; (2) not material; or (3) legal conclusions, not facts, Snyder does not have to adduce new facts to rebut Lowery's Statement.[3] Where the material facts of a case are undisputed, the Court may dispose of the case as a matter of law via summary judgment.

---

[2] Since Snyder has moved to file an Amended Complaint and withdrawn Counts I (Injunction), V (Waste & Misappropriation), VI (Fraud), IX (declaratory relief) and X (accounting) Defendants' demand that the Court award Summary Judgment in Defendants' favor seems mere semantics or a ploy to set the stage for yet another futile Rule 11 motion.

[3] We note that courts in this District have chastised summary judgment opponents for improperly mixing factual and legal argument in a statement of disputed material facts. *E.g.*, *Globalaw Ltd. v. Carmon & Carmon Law Office,* 452 F. Supp. 2d 1, 5 fn.3 (D.D.C. 2006).

> Factual disputes are not supposed to be resolved on summary judgment. The purpose of the summary judgment procedure is to determine whether there is a (material) factual dispute, in which event there must be a trial. FED. R. CIV. P. 56. That is the general rule, all right, but it doesn't make much sense in a case in which the only "factual" issue is one of characterization, that is, of application of [a legal standard to] undisputed lay facts, and the opponent of summary judgment claims no right to a jury trial. For then both the record and the fact finder are the same in the summary judgment proceedings as they would be in a trial. There is no more evidence to put in and no different trier to evaluate it. When both these conditions are satisfied, the formally "factual" dispute is properly resolved on summary judgment.

*Connors et. al. v. Incoal, Inc. et al.*, 995 F.2d 245, 251 (D.C. Cir. 1993) (citations and quotations omitted). *Arrington v. U.S.*, 473 F.3d 329, 333 (D.C. Cir. 2006) (summary judgment may be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *citing* Fed. R. Civ. P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

In addition, Local Civil Rule 56.1 specifically states that "in determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Here, Lowery does not dispute the facts that Snyder was treated as a partner, was introduced to others as a partner, and bought a "minority partner's" share of CASEtech. Therefore, Court must take these facts as conceded when evaluating Snyder's Cross-Motion.

**II.     Merely claiming that Defendants' Exhibit A gave Snyder consideration does**

**not mean that Snyder actually received any consideration**[4]

It is undisputed that Snyder owned 1/3 of L&S. Therefore, it is undisputed that 1/3 of L&S's profits belonged to Snyder and he had an undisputed right to a 1/3 share of any distribution of those profits. "It is a basic tenet of contract law that a party's agreement to perform a preexisting duty is "a typical example of invalid consideration." *United States v. Bridgeman*, 173 U.S. App. D.C. 150, 523 F.2d 1099, 1110 (D.C. Cir. 1975); *see also Interdonato v. Interdonato*, 521 A.2d 1124, 1134 (D.C. 1987) (stating principle); *Steele v. Isikoff et al.*, 130 F. Supp. 2d 23, 33 (D. D.C 2000).

> In order that there may be consideration, there must be mutual concessions. A release is not supported by sufficient consideration unless something of value is received to which the creditor had no previous right. If, in other words, an employee receives wages to which he had an absolute right, the fact that the amount is called consideration for a release does not make the release valid.

*Maynard v. Durham & Southern RR Co.,* 365 U.S. 160, 163 (1961) (release is invalid for lack of consideration if it was signed in exchange for wages already owed and remanding for jury trial on that issue) (citations omitted).

Defendants say Snyder received as "consideration" salary he was owed plus his share of the monies remaining after Lowery paid CASEtech's debts. Defendants' Material Fact 14. But Snyder had an undisputed right to these monies before Exhibit A was signed. Thus, Exhibit A

---

[4] Lowery and his lawyer drafted Exhibit A. Therefore, where it is ambiguous it should be strictly construed against Lowery. *See C&L Enters. v. Citizen Band Potowatomi Indian Tribe of Oklahoma*, 532 U.S. 411,423 (2001) (citing "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it.").

gives Snyder no consideration and therefore is not a contract.[5]

### III. Lowery breached his duty of good faith and fair dealing under the L&S Operating Agreement

It is undisputed that the L&S Operating Agreement is a contract. Under District of Columbia law,

> every contract [contains] an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing. [citation omitted]. This duty prevents a party from evading the spirit of the contract, willfully rendering imperfect performance or interfering with the other party's performance.

*Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988); *Steele v. Isikoff*, 130 F. Supp. 2d 23, 32 (D.D.C 2000) (same; citing *Hais*).

Defendants cite *Allworth v. Howard University,* 890 A.2d 194, 201-02 (D.C. 2006) in support of their argument that, since Snyder has not introduced evidence that Lowery "did not willfully render imperfect performance of interfere with Snyder's performance" there is no evidence that Lowery failed in his duty. *Allworth* is very instructive about the duty of good faith and fair dealing, and its opposite, bad faith. "'[B]ad faith may be overt or may consist of

---

[5] An alternative way to look at the situation is this: Lowery transformed Snyder's share of the L&S profits into CASEtech. Snyder's share of the L&S profits were his and his receiving them (in whatever form) is not consideration. Lowrey's argument that Snyder received "consideration" for signing Exhibit A is specious. The consideration Lowery describes is but an illusion--Lowery took Snyder's money and transformed it into CASEtech— like paying someone in gems rather than the cash they expected. Since illusory consideration is no consideration, Exhibit A is not a contract. *See e.g., Heuser v. Kephart,*, 215 F.3d 1186 (10th Cir. 2000) (holding that an illusory promise is not consideration for an agreement to settle litigation).

inaction, and fair dealing may require more than honesty. 'Bad faith' involves 'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.'" *Allworth,* 890 A.2d at 202 (quoting *Restatement (Second) of Contracts*, §205 cmt. d (1981)). Snyder contends that the facts show that is exactly what Lowery did: he evaded the spirit of the parties' agreement to operate L&S for mutual profit and abused his power to use L&S's profits to repay loans he had made to CASEtech.

## IV. Lowery breached his fiduciary duties to Snyder

### A. <u>Lowery breached his common law fiduciary duty to deal fairly, honestly and openly with Snyder</u>

As discussed in Snyder's initial Memorandum of Law (at pp.5-6), if a firm operates as a partnership it will be treated as a partnership in disputes between owners. *Helms v. Duckworth* 249 F.2d 482, 486-487 (D.C. Cir. 1957). This means that the owners "bear a fiduciary duty to deal *fairly*, honestly and openly" with each other. *Id.* (emphasis added); *see also Washington Med. Ctr, Inc. v. Holle*, 573 A.2d 1269, 1285 (D.C. 1990) (partners owe each other "the utmost good faith in all that pertains to their relationship" [internal quotation and citation omitted]). Lowery's conduct constitutes a breach of this duty as a matter of law. *See, e.g.*, *Washington Med. Ctr. v. Holle*, 573 A.2d at 1288 (partner's refusal to remit other partner's distributive share of proceeds of sale of partnership's primary asset at time all other partners were paid amounted to a breach of trust); *Beckman v. Farmer*, 579 A.2d at 653 (jury could fairly find that law partners breached their fiduciary duty to other partner where partners refused to conduct a winding up and final accounting and attempted to deny partner his rights as a partner and excluded him from

sharing in fee resulting from settlement of a case).

### B. Even if Lowery and Snyder are not treated as partners, Lowery still breached his fiduciary duties to Snyder under the L&S Operating Agreement

Pursuant to ¶5.4.3(b) of the L&S Operating Agreement, Lowery owes Snyder the duty to "refrain[] from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." This language is actually broader than allowed by D.C. Code Ann. §29-1020(a), which states that "[t]he liability of a manager or member in any proceeding brought by or in the right of a limited liability company or brought by or on behalf of members of the limited liability company may be limited or eliminated in the articles of organization or an operating agreement, except if the manager or member engaged in willful misconduct."

In analyzing the L&S Operating Agreement, then, it is useful to examine the meaning of "intentional misconduct" and compare it to "willful misconduct." "Willful" is defined as, *inter alia*, "**intentional**, not accidental or involuntary." Black's Law Dictionary (5th Ed.) at 1534 (emphasis added). Similarly, Black's defines "intention" as "determination to act in a certain way or to do a certain thing. Meaning; **will**; purpose; design." *Id.* at 727 (emphasis added). Thus the two words are synonyms and the standard for "willful" misconduct should be applied to Lowery's actions under the L&S Operating Agreement.

Although a number of states have adopted a "willful misconduct" standard in their LLC

statutes,[6] very few cases have addressed the application of this standard. In *Purcell v. Southern Hills Investments, LLC*, 847 N.E.2d 991 (Ind. App. 2006), the Indiana Court of Appeals interpreted Ind. Code §23-18-4-2(a), which states:

> Unless otherwise provided in a written operating agreement, a member of manager is not liable for damages to the limited liability company or to the members of the limited liability company for any action taken or failure to act on behalf of the limited liability company, unless the act or omission constitutes willful misconduct or recklessness.

The court explained that

> a willful and wanton act of commission is: an intentional act done with the [*sic*] reckless disregard of the natural and probable consequence of injury to a known person under circumstances known to the other actor at the time . . . . [W]illful and wanton misconduct has two elements: 1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and 2) the actor's conduct must have exhibited an indifference to the consequences of his own conduct.

847 N.E.2d at 999 (internal citations and quotations omitted).

In *Purcell*, the defendant (Purcell) owned an LLC (Metro Xmit, LLC) that was a 50% member in the LLC whose operations were at issue in the action (VillageNet Services, LLC). *Id.* at 993-94. The court concluded that, by repaying a personal loan that he had made to Metro with

---

[6]Ala. Code §§10-12-21(g), (k)(2) (2005); Ark. Code Ann. §4-32-402 (2005); Cal. Corp. Code §17153 (Deering 2005); Fla. Stat. Ann. §608.4225(1)(b) (West 2005); Haw. Rev. Stat. §428-409(c) (2004); Idaho Code Ann. §53-622(1) (2005); 805 Ill. Comp. Stat. Ann. 180/15-3 (West 2005); Ind. Code Ann. §23-18-4-2 (West 2005); Ky. Rev. Stat. Ann. § 275.170(1) (LexisNexis 2005); Mont. Code Ann. §35-8-310(3) (2005); N. H. Rev. Stat. Ann. §304-C:31(IV) (2005);  N. M. Stat. Ann. §53-19-16(B)(LexisNexis 2006); Or. Rev. Stat. §63.155(3) (2003); S. C. Code Ann. §33-44-409(c) (2005); Utah Code Ann. §48-2c-807(1) (2005); Wash. Rev. Code Ann. §25.15.155(1) (West 2005); W. Va. Code Ann. § 31B-4-409(c) (West 2005); Wis. Stat. Ann. §183.0402(1) (West 2005).

funds rightfully belonging to VillageNet, Purcell engaged in conduct exhibiting an indifference to the consequences of his own conduct, and affirmed the trial court's conclusion that his conduct amounted to willfulness or recklessness. *Id.* at 1000; *see also Foster-Thompson, LLC v. Thompson*, 2007 WL 1725198 (M.D. Fla. June 14, 2007) (under Florida statute prohibiting, *inter alia*, willful misconduct by LLC manager or managing member, LLC member could bring breach of fiduciary duty claim against member or managing member for wrongfully retaining revenues and profits of LLC).

Similarly, here Lowery used a significant portion of the funds L&S received as a result of the sale of the Second Street Property to repay personal loans that he had made to CASEtech—in which he owned an 80% interest that would be marketable only if CASEtech was debt-free—even though, since Exhibit A is not an enforceable contract, 33.3% of those funds belonged to Snyder.  Based on *Purcell* and *Foster-Thompson*, Lowery's conduct constitutes intentional misconduct and, thus, is a breach of the L&S Operating Agreement.

**CONCLUSION**

For all these reasons the Court should Grant Snyder's Cross-Motion for Summary Judgment and Deny Defendants' Motion for Summary Judgment.

        Respectfully submitted,

        Michael Snyder,
        By Counsel

KAUFMAN LAW, A Professional Corporation
11350 Random Hills Rd.  Suite 800
Fairfax, VA 22030
703.764.9080
703.764-0014 (fax)
David@dzklaw.com
Counsel for Plaintiff

By:    /s/
      D.Z. Kaufman, Bar # 435123

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2007, a copy of the above document was served via ECF of the U.S. District Court of the District of Columbia on counsel for Defendants Dale A. Cooter, Esq. and James E. Tompert, Esq., 5301 Wisconsin Ave., NW, Suite 500, Washington, D.C. 20015.

        /s/
        David Zachary Kaufman