IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Snyder, Michael | * | |
| Plaintiff | * | |
| v. | * | Case No.: 1:06cv02213 JR |
| Dale Lowery   et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

AMENDED COMPLAINT

Plaintiff, Michael Snyder, ("Snyder"), by his attorney, David Zachary Kaufman, Esq. and KAUFMAN LAW, a Professional Corporation, files this Amended Verified Complaint against defendants, and states as follows:

JURISDICTION

1. Jurisdiction of this Court is based on D.C. Code Ann. §11-921.  Personal jurisdiction of this Court over the defendants is based on Court is based on 28 U.S.C. §1332 (Diversity).

THE PARTIES

2. Plaintiff Snyder is a resident and domiciliary of the State of Maryland, engaged in the business of providing computer consulting services to federal government agencies and other organizations in and about the District of Columbia metropolitan area.  Snyder is also engaged in the business of real estate investing in and about the District of Columbia metropolitan area. Snyder owns 20% of Defendant CASEtech and 1/3 of Defendant L&S.

3. Defendant CASEtech, Inc. ("CASEtech") is, on information and belief, a Delaware

close corporation, carrying on business in, and with its principal offices situate in, the District of Columbia.

4. Defendant L&S, LLC ("L&S") is, on information and belief, a Washington, D.C. Limited Liability Corporation, carrying on business in, and with its principal offices situate in, the District of Columbia. A copy of L&S's Operating Statement is attached as Exhibit 1.

5. Defendant Dale Lowery ("Lowery"), on information and belief, owns 80% of the shares of CASEtech and is a shareholder, director, and officer [President] of CASEtech, and works in and from CASEtech's offices located in the District of Columbia. Lowery also, on information and belief, owns 2/3 of L&S and is the managing member of L&S and works in and from L&S's offices located in the District of Columbia.

FACTS

6. At the times relevant hereto, Snyder was, and should now be, a 20% shareholder, director, and officer [Vice President] of CASEtech.

7. At the times relevant hereto, Snyder and Lowery operated CASEtech as if it were a partnership with Snyder as the Minority Partner.

8. At the times relevant hereto, Snyder was, and should now be, a 1/3 owner of L&S.

9. At all times relevant hereto Snyder and Lowery operated L&S as if it were a partnership.

10. Specifically, Snyder was, and should be, the owner of 20% of the issued and outstanding shares of stock in CASEtech, which shares of stock are in his actual, legal and equitable possession (the "Snyder CASEtech Stock").

11. Specifically, Snyder was, and should be, the owner of a 33.33% Membership Interest in L&S and concomitantly 33.3% of the Voting Rights of L&S Members.

12. Snyder is accorded 20% ownership of CASEtech and concomitantly 20% of the voting rights of CASEtech's stockholders.

13. Lowery was, and should be, the owner of the other 80% of the issued and outstanding shares of stock in CASEtech. By his shares of stock, Lowery was, and should be, accorded the other 80% ownership of CASEtech and concomitantly 80% of the voting rights of CASEtech's stockholders.

14. Lowery was, and should be, the owner of the other 66.67% of L&S's Membership Interest and concomitantly accorded 66.67% of the Voting Rights of L&S Members.

15. During early 2006, Most Ventures, Inc. (hereinafter "MVI") approached CASEtech, Lowery and Snyder to enquire about the possible purchase of Lowery's interest in CASEtech. Lowery was interested in selling his interest in CASEtech and withdrawing from the firm. MVI was interested in purchasing most of Lowery's 80% interest in CASEtech provided that CASEtech was debt-free and provided that Snyder would sign a long-term employment contract.[1] All parties were, upon information and belief, willing to undertake the appropriate actions to consummate the sale.

16. In March 2005, CASEtech owed approximately $200,000.00 to National Capitol Bank, $60,000.00 to Snyder, and $360,000.00 to Lowery.

17. At that time, Snyder threatened to quit CASEtech unless Lowery began to take steps

---

[1] Upon information and belief, one reason MVI wanted CASEtech to be debt-free before it would purchase Lowery's interest in CASEtech was that MVI had discovered a number of accounting discrepancies in Lowery's favor when doing its due diligence.

to reduce CASEtech's debts.

18. Also in March 2005, Snyder started work at the U.S. DOT full time and day-to-day management of CASEtech devolved upon Lowery.

19. Sometime after May 2005 Lowery decided that he would pursue the sale of CASEtech and/or his interest in CASEtech.

20. On March 9, 2006, at Snyder's first meeting with MVI, he discovered that in one year, Lowery had managed to run up another $400,000.00 in debt, including $20,000.00 in back payroll to Snyder and $360,000.00 which Lowery allegedly loaned to CASEtech.

21. In order to pay CASEtech's debts, Lowery proposed to Snyder that L&S sell one of its properties (the property at 515 Second St. NE, Washington, D.C.) and that the money realized from the sale be invested in CASEtech.

22. In November 2005, Lowery presented a document called a "Funding Allocation Agreement" to Snyder for signature. The Agreement, dated November 4, 2005, was presented to Snyder before he had any knowledge of MVI or that CASEtech has accumulated $270,000.00 in additional debt to Lowery.

23. This Funding Allocation Agreement not only provided for the bank loan to be repaid, it also provided that monies Lowery had advanced to CASEtech would be repaid out of the proceeds of the sale.

24. Lowery presented the Agreement to Snyder, telling Snyder that the Agreement had to be signed immediately. Trusting Lowery, Snyder signed.

25. Lowery's intent, on information and belief, as President of CASEtech, was to use this money to pay off all CASEtech's debt, including CASEtech's debt to himself.

26. To that end, Lowery persuaded Snyder to sign without reading a document agreeing that L&S would sell the property at 515 Fifth St. SE, Washington, D.C., and that a portion of the proceeds would be invested in CASEtech. Lowery represented, and Snyder believed, that only enough money to pay off the $200,000.00 bank loan would be invested into CASEtech. Lowery further represented, and Snyder believed, that the remainder of the profits from the sale of the L&S property would be distributed to L&S's owners in accordance with L&S's Operating Agreement. This turned out not to be the case.

27. Instead, almost all the proceeds from the sale of 515 Second St., NE were "invested" into CASEtech so that CASEtech could pay off all its debt (to the bank and to Lowery himself). The net result of these actions by Lowery resulted in Snyder's 33.33% interest in the proceeds from selling L&S's property at 515 Second St. NE being given to CASEtech — a loss to Snyder of approximately $314,000.00.

28. When Snyder protested this scheme, Lowery, purporting to act in his capacity as President of CASEtech, did the following:

    a. Refused to pay Snyder's approximate $140,000 annual salary as an officer/employee of CASEtech, until legal action was threatened while, at the same time, Lowery was and is drawing in excess of $10,000.00/month in so-called salary and "bonuses" from CASEtech and, upon information and belief, Lowery was and is paying his brother in excess of $5,000.00/month in so-called salary and "bonuses" from CASEtech.[2]

    b. Wrongfully refused to pay to Snyder, and wrongfully detained, Snyder's

---

[2] Snyder makes no claim for the withheld salary and wages, as Lowery paid the amount owed under threat of lawsuit.

share of L&S's profits from selling the property at 515 Fifth St. SE, in the amount of approximately $314,000.00.

      c. Upon information and belief, stopped working on CASEtech matters that were his responsibility such as marketing and obtaining new contracts or extensions of existing contracts.

29. As a result of all these things, MVI decided not to go forward with the purchase of Lowery's shares of CASEtech.

30. As a further result of all these things, the value of CASEtech went from, upon information and belief, approximately $500,000.00 in May 2006, to, upon information and belief, zero ($0.00).

31. Lowery has fiduciary obligations to both L&S and ~~to~~ Snyder as a result of his ownership and control of L&S and CASEtech.

32. As a result of the actions, errors and omissions aforesaid of defendants Lowery, CASEtech and L&S, Snyder has suffered and will continue to suffer damages at the actual value thereof of at least $953,000.00 for which Snyder seeks judgment *infra* for his rightful 1/3 share.

COUNT I
BREACH OF FIDUCIARY DUTIES

33. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-32 of this Complaint.

34. Defendant Lowery and Snyder operated L&S, LLC as if it were a partnership.

35. Defendant Lowery and Snyder operated CASEtech as if it were a partnership.

36. Defendant Lowery breached his fiduciary duties owed to Snyder as the Manager and

a fellow Member of L&S by his actions and inactions aforesaid, including his schemes to obtain an excessive share of the L&S profits from the sale of its assets.

37. Defendant's breach of fiduciary duties as aforesaid was the direct and proximate cause of Snyder's actual damages suffered in the approximate total amount of $314,000.00.

WHEREFORE, plaintiff Michael Snyder demands judgment against defendants Lowery, CASEtech and L&S jointly and severally, as follows:

    i. Compensatory damages in the sum of $314,000.00 with legal interest thereon;

    ii. Punitive damages in the sum of $1,000,000, each;

    iii. And for such other and further relief as the Court may deem appropriate.

## COUNT II
## BREACH OF CONTRACT

38. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-37 of this Complaint.

39. The L&S Operating Agreement provides, in relevant part: "5.4.3(b) A Member's duty of care to the Company and the other Members in the conduct and winding up of the Company business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law."

40. Defendant Lowery breached the L&S Operating Agreement by engaging in the conduct set forth herein.

41. As direct and consequential results of Lowery's conduct Snyder has sustained damages the approximate total amount of $314,000.00.

WHEREFORE, plaintiff Michael Snyder demands judgment against defendant Lowery as follows:

    i.  Compensatory damages in the sum of $314,000.00 with legal interest thereon;

    ii.  And for such other and further relief as the Court may deem appropriate.

## COUNT III
## BREACH OF COVENANT OF
## GOOD FAITH AND FAIR DEALING

42. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-41 of this Complaint.

43. The actions of Defendant Lowery breached the covenant of good faith and fair dealing implied in the L&S Operating Agreement.

44. Lowery's breach of the covenant of good faith and fair dealing was the direct and proximate cause of Snyder's actual damages suffered in the approximate total amount of $314,000.00

WHEREFORE, plaintiff Michael Snyder demands judgment against defendant Lowery as follows:

    i.  Compensatory damages in the sum of $314,000.00 with legal interest thereon;

    ii.  Punitive damages of $1,000,000.00.

    iii.  And for such other and further relief as the Court may deem appropriate.

## COUNT IV

UNJUST ENRICHMENT

45. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-44 of this Complaint.

46. Despite Snyder's entitlement to his share of the proceeds from the sale of L&S's property, Lowery and/or L&S has failed and refused to pay to Snyder approximately $314,000.00 of Snyder's money that Lowery and/or L&S gave to CASEtech to release indebtedness on loans made for the benefit of CASEtech and Lowery personally.

47. In failing and refusing to pay Snyder the approximately $314,000.00, Lowery and/or L&S and/or CASEtech have retained a benefit which in justice and equity belongs to Snyder.

48. Under the circumstances set forth herein, as between Snyder and Lowery and/or L&S and/or CASEtech, it is unjust for Defendants to retain the approximately $314,000.00

WHEREFORE, plaintiff Michael Snyder demands judgment against all Defendants jointly and severally, as follows:

    i. Compensatory damages in the sum of $314,000.00 with legal interest thereon;

    ii. Punitive damages in the sum of $1,000,000;

    iii. And for such other and further relief as the Court may deem appropriate.

## COUNT V
## TROVER AND CONVERSION

49. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-48 of this Complaint.

50. Lowery and CASEtech, wrongfully, maliciously, tortiously, wantonly, and with ill-

-9-

will and willful disregard of Snyder's rights, sought to and have exercised complete control and ownership of Snyder's share of the profits from the sale of 515 Second Street.

51. Lowery did and has converted to his own and/or CASEtech's use and benefit, the monies which Snyder advanced to CASEtech, for Lowery's own satisfaction and gain and with evil and rancorous motive influenced by hate or ill-will, his purpose being to deliberately and willfully injure Snyder.

52. Defendants' trover and conversion was the proximate cause of Snyder's actual damages suffered in the approximate total amount of $314,000.00.

WHEREFORE, plaintiff Michael Snyder demands judgment against defendants Lowery and CASEtech jointly and severally, as follows:

   i. Compensatory damages in the sum of $314,000.00; with legal interest thereon;

   ii. Punitive damages in the sum of $1,000,000, each;

   iii. And for such other and further relief as the Court may deem appropriate.

## COUNT VI
## EQUITABLE LIEN/CONSTRUCTIVE TRUST

53. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-52 of this Complaint.

54. Despite Snyder's entitlement to payment for his share of L&S refused to pay to Snyder the approximately $314,000.00 that Lowery "invested" in CASEtech from the proceeds of L&S's sale of its property so that CASEtech could pay its debts (primarily) to Lowery.

55. Snyder is entitled to an equitable lien or constructive trust on the assets of

defendants in such amount[s] as may be due and rightfully belonging to Snyder.

WHEREFORE, plaintiff Michael Snyder requests that this Honorable Court enter a decree that:

    i. Orders defendants to account for all receipts, expenditures, and distributions on their accounts for the period from January 1, 2000, through and including the present;

    ii. Orders defendants to produce all books, records or other information concerning distributions and/or monies to which Snyder is rightfully entitled;

    iii. Requires defendants to remit to Snyder the balance of any such distributions and/or monies to which Snyder is rightfully entitled;

    iv. Creates an equitable lien and/or constructive trust upon the assets of defendants Lowery, CASEtech and L&S in favor of Snyder for all sums due to him.

    v. And for such other and further relief as the Court may deem appropriate.

## COUNT VII
## JUDICIAL DISSOLUTION OF L&S, LLC

56. Plaintiff realleges and incorporates herein by reference the allegations of paras. 1-55 of this Complaint.

57. L&S is in *de facto* dissolution but without appropriate arrangements being made to protect the interests of the minority Member (Snyder).

58. The business and affairs of the Company are no longer being carried out by the controlling Member (Lowery), to the detriment of all members, especially Snyder.

59. Under these circumstances, Snyder is entitled to a judicial dissolution of the

-11-

Company pursuant to D.C. Code §29-1048.

WHEREFORE, plaintiff Michael Snyder requests that this Honorable Court enter judgment in his favor and against Lowery and L&S and that this Court

    i.  Direct the judicial dissolution of the Company;

    ii.  Impose upon the Company the procedures for judicial dissolution;

    iii.  Direct that the procedures for judicial dissolution be implemented by the Company, with the involvement of a receiver, if necessary;

    iv.  Award Plaintiff his attorney's fees and costs of this action; and

    v.  Award such other and further relief as justice may require.

Dated: June 11, 2007

                                                 Michael Snyder,
                                                 By Counsel

KAUFMAN LAW, A Professional Corporation
11350 Random Hills Rd. Suite 800
Fairfax, VA 22030
703.764.9080
703.764-0014 (fax)
David@dzklaw.com
Counsel for Plaintiff

By: _____
     D.Z. Kaufman, Bar # 435123

## CERTIFICATE OF SERVICE

     I hereby certify that on June 11, 2007, a copy of the above document was served via ECF of the U.S. District Court of the District of Columbia on counsel for Defendants Dale A. Cooter, Esq. and James E. Tompert, Esq., 5301 Wisconsin Ave., NW, Suite 500, Washington, D.C. 20015.

_____
David Zachary Kaufman