**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL SNYDER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 06-2213 (JR) |
| | : |
| DALE LOWERY, *et al.*, | : |
| | : |
| Defendants. | : |

**MEMORANDUM**

Plaintiff Michael Snyder and defendant Dale Lowery are co-adventurers in a pair of closely held corporate entities. Snyder holds a 1/5 share of "CASEtech," a Delaware corporation, and a 1/3 share of "L&S," a D.C. limited liability company. Lowery holds the remaining majority shares of both entities. In November 2005, Snyder and Lowery signed an agreement under which a major real estate asset of L&S would be sold and the proceeds used in large part to pay off the debts of CASEtech. This appears to have been a bad deal for Snyder: his share in the proceeds of the real estate sale was reduced because the L&S profits were used to pay down the debt of another company in which he held a smaller interest, and much of that debt was owed to Lowery. Snyder thus complains in various forms that, although he signed the agreement, it was unfair and the resulting distribution of funds should be undone.

These complaints and associated remedial requests are now presented on cross-motions for summary judgment. They

include: (1) breach of fiduciary duty; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment; (5) trover and conversion; (6) equitable lien; and (7) judicial dissolution of L&S.  If there were a genuine issue of material fact here, it would be, for every claim, whether the deal that Snyder agreed to was voluntary, or whether (on the other hand) he was tricked or abused by his business partner.  Because the plaintiff has neither presented evidence nor pointed to anything in the record that would support a finding that he was deceived, however, there is no genuine issue of material fact, and summary judgment must be granted for the defendant.

### Factual Background

In March 2005, CASEtech was in considerable debt.  It owed $200,000 to National Capitol Bank, $60,000 to Snyder, and $360,000 to Lowery.  Amended Complaint [25] at ¶ 16.  Snyder does not say that he was ignorant of these debts, and he presumably knew about them, as he threatened to quit at that time unless CASEtech reduced its indebtedness.  Id. at ¶ 17.  Indeed, Snyder's complaint alleges that Lowery hatched the plan to sell the L&S property at 515 Second Street NE for the express purpose of reducing CASEtech's debts, and that he presented the plan to Snyder as such.  Id. at ¶ 21 ("Lowery proposed to Snyder that L&S sell one of its properties . . . and that the money realized from

the sale be invested in CASEtech."). To this end, Lowery presented Snyder with an agreement to expend the profits of the sale by first paying off all the debts of CASEtech and then distributing the residual profit pro rata between the two of them. He presented this plan to Snyder on November 4, 2005, in a one-page document called a "Funding Allocation Agreement." See Plaintiff's Statement of Uncontested Facts [18] at ¶ 15; [11, Exhibit A]. Although Snyder's complaint alleges that Lowery convinced him to sign this document "immediately" and "without reading it," Amended Complaint [25] at ¶¶ 24, 26, Snyder does not dispute that the agreement was in fact executed one day later, on November 5, 2005. See Defendant's Statement of Undisputed Facts [11] at ¶ 1; Plaintiff's Statement of Uncontested Facts [18] at 1 ("Snyder agrees with and hereby incorporates by reference Lowery's Uncontested Facts Nos. 1, 3-7, 9-12.").

The Funding Allocation Agreement is succinct, occupying one page and only four small operative paragraphs. It specifies the following distribution for the proceeds of the real estate sale:

> FIRST, to pay the costs of the sale . . . .
>
> SECOND, to pay off existing mortgages on [the property].
>
> THIRD, to contribute to the capital of the Corporation [CASEtech] (in the proportions set forth in Article Fourth below) the amount

> necessary to pay off all short and long term debt of the Corporation. This debt consists primarily of (A) the major part of a $200,000.00 line of credit owed to the National Capitol Bank; and (B) monies used for operating capital and secured by 816 North Carolina Avenue, S.E., a private residence owned by Dale E. Lowery.
>
> FOURTH, any funds remaining after satisfaction of the above obligations shall be distributed to the Partners without encumbrance according to their relative ownership interests in L&S, i.e. 66.7% to Dale E. Lowery and 33.3% to I. Michael Snyder.

[11, Exhibit A]. The schedule of the payout is clear, and the parties agree that it was followed. Defendant's Statement of Undisputed Facts [11] at ¶ 11. Snyder's complaint represents, however, that Lowery pressured Snyder to sign the agreement "right away," and that Lowery represented that "only enough money to pay off the $200,000.00 bank loan would be invested into CASEtech." Amended Complaint [25] at ¶¶ 24, 26.

Taking the allegations in the complaint as true – and assuming arguendo that the investment in CASEtech was without any value[1] – Lowery's alleged misrepresentation led to an unexpected

---

[1] Note that the capital contributions were to be made to CASEtech according to a 1:2 ratio, rather than the 1:4 ratio of the partners' previous stock ownership. The parties have not discussed whether Snyder thereby acquired a larger share of CASEtech, though this is the ostensible outcome.

loss for Snyder of approximately $133,000.[2]  At some point after the funds were distributed, Snyder decided that the payout was unfair and asked that certain funds be returned to him.  Lowery refused.

It is undisputed that Snyder generally had access to the books of both companies, and that he would take them home and review the companies' financial affairs from time to time. Defendant's Statement of Undisputed Facts [11] at ¶ 10.  In fact, it was plaintiff who insisted that Lowery take steps to reduce CASEtech's indebtedness.  Lowery presented the planned sale of the property to plaintiff as intended to accomplish precisely that result, and plaintiff admits that the payment of CASEtech debts was one contemplated result of the sale – at least with respect to the $200,000 bank loan.  Amended Complaint [25] at ¶¶ 17, 21, 26.  Lowery further submits that plaintiff "had knowledge of the debt incurred by CASEtech, including the monies that Lowery had advanced to CASEtech from his home equity line of credit," Defendant's Statement of Facts In Dispute [20] at ¶ 10, and plaintiff does not suggest otherwise.  See [24] at 3-4.

---

[2]     The sale of the building yielded about $900,000 in cash after the closing costs and mortgage were paid.  See [11, Exhibit C].  After paying off the bank loan of $200,000, about $700,000 would have been left for distribution, of which Snyder's share, but for his increased share of the capital contribution to CASEtech, would have been about $233,000.  He in fact received around $100,000.

**Summary Judgment**

Every claim of plaintiff's but one has some variety of deception or mistreatment as a necessary element.  Plaintiff spends considerable ink arguing that the agreement he signed was not a contract because it lacked consideration: he gave up a 33% interest in a fixed sum for, essentially, a 20% interest in the same sum.  This argument is not only dubious – plaintiff received various forms of consideration, including an increase in his ownership of another company in which he had an interest – but it is beside the point.  Whether the agreement was a contract or not, the defendant was entitled to rely upon an agreement of all the shareholders of L&S in distributing its profits to CASEtech unless that agreement was obtained by some form of trickery or abuse that was inappropriate in the context of the business partnership.  See, e.g., International Ins. Co. v. Johns 874 F.2d 1447, 1460 & n.25 (11th Cir. 1989) (corporate waste, including self-dealing breaches of fiduciary duty by corporate decision-makers, can be ratified by unanimous consent of the shareholders); Kerbs v. California Eastern Airways, 90 A.2d 652, 655 (Del. Ch. 1952) (same).  Thus, all plaintiff's claims reduce to one: that his consent to distribute a share of the profits from the L&S real estate sale to CASEtech for the purpose of reducing CASEtech's debt was obtained unfairly.

This claim cannot survive the pending motion for summary judgment because plaintiff has presented no evidence to substantiate it and no evidence to refute the facts presented, and supported, by the defendant.  Plaintiff alleges that he was pressured to sign the agreement without reading it and that defendant misrepresented the amount that it would cost to pay off CASEtech's debts.  It is undisputed, however, that plaintiff was aware of CASEtech's debts, including the debt owed to Lowery, that plaintiff had access to the companies' books, that plaintiff had a day (or took a day) to consider the agreement, that plaintiff wanted CASEtech to decrease its indebtedness, that plaintiff knew that the purpose of the real estate sale was to reduce CASEtech's debt, that plaintiff signed the concise, clearly written agreement, and that plaintiff knew or must have known that, as a consequence of signing the agreement, he would lose at least a portion of his claim to the proceeds of the sale, i.e. about 13% of the $200,000 bank loan.  If the record consisted of nothing but warring affidavits, plaintiff's mere allegations of misrepresentation would suffice; in the face of all this undisputed evidence, however, plaintiff's unsupported allegations have no weight.

Without any evidence of misconduct, it is not essential to determine what level of fiduciary relationship existed between Snyder and Lowery.  Snyder contends that L&S was run as a

partnership, while Lowery points out that L&S was organized as an LLC and had an agreement which specifically established the duty of care that each member owed to the other.  Even if Snyder and Lowery were partners, however, Snyder has failed to show a breach of fiduciary duty because he has shown no wrongdoing.  The evidence, in a light most favorable to the plaintiff, shows that the defendant suggested a plan that would cost the plaintiff cash now but achieve one of plaintiff's own stated objectives: improving the balance sheet of CASEtech.  Plaintiff agreed and defendant executed that plan.

The only claim that does not necessarily depend in some measure upon a showing of misconduct is Snyder's request for judicial dissolution of L&S.  There is a dispute over whether, for purposes of dissolution, L&S should be treated as an LLC (which is how it is organized) or as a partnership (which is how, according to Snyder, its business has been conducted as a practical matter).  The parties have treated this claim as an afterthought, however, and Snyder has presented no evidence that the extreme remedy of dissolution is required for L&S to carry on its business fairly and efficiently.  This claim will accordingly be dismissed without prejudice.

An appropriate order accompanies this memorandum.


                                    JAMES ROBERTSON
                              United States District Judge